NOT FOR PUBLICATION



FILED

JAN 29 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | ) BAP Nos. CC-14-1175-KuPaTa |
| | ) CC-14-1224-KuPaTa |
| RICHARD J. SEGAL, | ) (Cross-Appeals) |
| | ) |
| Debtor. | ) Bk. No. 08-12110 |
| _____ | ) |
| | ) |
| STEPHEN S. FADEN, | ) |
| | ) |
| Appellant and Cross-Appellee, | ) |
| | ) |
| v. | ) **MEMORANDUM**[*] |
| | ) |
| RICHARD JOEL SEGAL; | ) |
| JUDITH SEGAL, | ) |
| | ) |
| Appellees and Cross-Appellants. | ) |
| _____ | ) |

Argued and Submitted on November 20, 2014
at Los Angeles, California

Filed – January 29, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Meredith A. Jury, Bankruptcy Judge, Presiding

_____

Appearances:    Gerald N. Silver argued for appellant and cross-appellee Stephen S. Faden.

_____

Before: KURTZ, PAPPAS and TAYLOR, Bankruptcy Judges.

Memorandum by Judge Kurtz
Concurrence by Judge Taylor

_____

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

**INTRODUCTION**

Richard and Judith Segal commenced contempt proceedings against Stephen Faden for violation of the discharge injunction. The bankruptcy court awarded $7,616 in sanctions against Faden based on the Segals' attorney's fees, but the court denied Judith Segal's request for emotional distress damages because it found that she did not suffer emotional distress as a result of Faden's violation of the discharge injunction.

Faden appealed the bankruptcy court's contempt ruling. Faden challenges both the finding of contempt and the amount of the sanctions award. The Segals filed a cross-appeal focusing on the court's denial of emotional distress damages.

We agree with the bankruptcy court's careful determination that Faden violated the discharge injunction. Additionally, the court's emotional distress findings are not clearly erroneous. However, with respect to the amount of sanctions awarded, we need additional findings. While the answers to our questions might seem obvious to the bankruptcy court in light of its familiarity with the parties and the proceedings, the existing findings and record leave us uncertain as to the precise basis for the court's sanctions award.

Consequently, we AFFIRM in part and VACATE AND REMAND in part, so the bankruptcy court can make further findings concerning its sanctions award.

**FACTS**

In 2007, Faden filed a lawsuit in the Los Angeles County

Superior Court against Segal, Segal's wife Judith,[1] and several businesses owned or controlled by Segal. In that lawsuit, Faden sought relief from the defendants' default on a promissory note. All of the defendants stipulated to entry of judgment against them, jointly and severally, in the amount of $346,997.08. A stipulated judgment was entered for that amount in December 2007.

A few months later, in February 2008, Faden and others filed an involuntary chapter 7[2] bankruptcy petition against both Segal and Judith. In March 2008, the petitioning creditors filed an "amended" involuntary petition purporting to dismiss the petition as against Judith only.[3] Over a year later and after a highly-contentious litigation process involving numerous filings and hearings, the bankruptcy court entered an order for relief against Segal only on March 26, 2009.

During the course of the bankruptcy case, Faden purported to sell the Faden judgment to a third party by the name of David Silberstein. Silberstein used the Faden judgment as the alleged basis for an exception to discharge claim against Segal under § 523(a)(2)(A). Ultimately, the bankruptcy court dismissed with prejudice Silberstein's nondischargeability adversary proceeding.

---

[1]We refer to Segal's wife Judith by her first name for clarity. No disrespect is intended.

[2]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[3]The petitioning creditors' actions against Judith ultimately led to a damages award in her favor pursuant to § 303(i).

3

Meanwhile, in 2012, the bankruptcy court granted Segal a discharge in his bankruptcy case. The bankruptcy court entered a standard form chapter 7 discharge order granting Segal a discharge pursuant to § 727. The bankruptcy court's docket reflects that a copy of the discharge order was mailed to Faden. The form order was substantially the same as Official Form 18 and, on the reverse side, described in lay terms the effect of the discharge as follows:

> The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, **to file or continue a lawsuit**, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. [In a case involving community property: There are also special rules that protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.] A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

Reverse Side of Discharge Order (March 9, 2012) (emphasis added).

The reverse side of the discharge order further explained that "[m]ost, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed." Id. The reverse side also provided a list of common types of debt excepted from the discharge. The concluding paragraph on the reverse side cautioned that its explanation of the effect of the discharge was a general summary of the law and encouraged interested parties to consult an attorney if they needed to ascertain the precise effect of the discharge to their specific situation.

Notwithstanding the entry of the discharge order, in October 2013, Faden took legal action against the Segals. In a state

4

court lawsuit commenced by RJS Realty LTD and Greenstone LLC (two of Segal's affiliated business entities), Faden filed a cross-complaint against the Segals and others based on the Faden judgment and other prepetition claims.[4]

Within a couple of weeks, Segal (a licensed attorney) reopened his bankruptcy case and filed a motion on behalf of himself and Judith seeking an order to show cause why Faden should not be held in contempt for violation of the discharge injunction. In the motion, the Segals asserted that Faden violated the discharge injunction as to both of them by filing the cross-complaint. They further asserted that they were entitled to compensatory damages in the form of the attorney's fees Segal would incur in representing them, damages resulting from the emotional distress that Judith had suffered as a result of the filing of the cross-complaint, and punitive damages.

In response, Faden filed a preliminary opposition to the Segals' motion arguing that an order to show cause should not issue. Faden denied that he had knowingly violated the discharge injunction and also argued that his actions were justified by Segal's alleged misconduct in the state court litigation and in the transactions leading up to the state court litigation. In addition, Faden asserted that his actions were beyond the scope of the discharge injunction afforded to Judith as a non-debtor spouse.

After the bankruptcy court entered the order to show cause,

_____

[4]Faden contended that the sale of the Faden judgment to Silberstein was invalid and that he thus retained ownership of and the right to enforce that judgment.

both sides filed additional papers in support of their positions. Upon reviewing the additional filings, the court issued a notice in January 2014 identifying certain facts as undisputed and other facts as disputed and setting an evidentiary hearing.

The court identified as undisputed Faden's active participation in Segal's bankruptcy case as a petitioning creditor, his assignment or sale of the Faden judgment to Silberstein, and Silberstein's unsuccessful attempt to except the Faden judgment from discharge. The court further noted that the discharge order in Segal's bankruptcy case was mailed to Faden and that the discharge protected both Segal and Judith. With respect to Judith, the court stated that the Faden judgment was a community claim and that, unless Judith had separate property, any action against her would constitute a discharge injunction violation. Finally, the court stated that Faden filed the cross-complaint in part based on the Faden judgment and that Faden still had not dismissed the cross-complaint as against the Segals.

The court identified the following factual issues to be resolved at the evidentiary hearing:

    1.  [Whether], despite the notice of discharge from the bankruptcy court, Faden had no knowledge of the discharge prior to this OSC.

    2.  [Whether] Judith Segal has separate property which would be subject to the Faden Judgment.

    3.  [Whether] any of the documents attached to any of the pleadings filed by debtor or Faden in support of or opposition to this OSC lack authenticity or would be otherwise inadmissible.

    4.  [Whether] debtor incurred recoverable damages as a result of the discharge violation and the amount of those damages.

6

Notice of Issues for Evidentiary Hearing on OSC (Jan. 22, 2014) at 2:21-3:2.

In the final sentence of the evidentiary hearing notice, the court directed that Faden would be the first to present evidence at the hearing because Segal already had presented a prima facie case in support of his contempt motion.

The bankruptcy court held the hearing on the contempt motion on February 7, 2014. Through most of the contempt proceedings, the Segals represented themselves, but the Segals retained counsel by the name of Craig Smith to represent them at the evidentiary hearing. Faden was represented by counsel as well, but Faden did not appear for examination at the hearing, nor did his counsel request a continuance so that Faden could appear and testify. The court expressed surprise at Faden's failure to appear given that the contempt proceedings were brought against Faden and some of the factual issues concerned Faden's state of mind, particularly his knowledge of the discharge injunction.

Faden's counsel's presentation was limited to argument and the declarations and exhibits that Faden had presented to the court before the evidentiary hearing. One of Faden's key points was that Faden never served a summons or the cross-complaint on either of the Segals in their personal capacity. Faden acknowledged that he served Segal in his capacity as counsel for RJS Realty Ltd, but he pointed out that the only act he arguably took in violation of the discharge injunction was the filing of the cross-complaint naming both of the Segals as defendants.

Faden also pointed out that, several days before the evidentiary hearing, he filed in the state court a request for

7

dismissal of the Segals from the cross-complaint and that he notified the Segals of the filing of this request.

Faden's counsel also attempted to frame other arguments at the hearing, including arguments regarding Faden's knowledge of the discharge injunction. The court advised Faden's counsel that, without Faden's live testimony, these other arguments were virtually worthless.

The Segals then presented their testimony, and Faden's counsel cross-examined them both. Their testimony principally focused on damages they allegedly suffered as a result of Faden's filing of the cross-complaint. Their evidence regarding Judith's emotional distress was limited to their testimony.

The court accepted into evidence all of the exhibits offered by the parties. Among those exhibits were invoices for legal services rendered in the contempt proceedings by Segal and Smith. Smith's invoice covered services rendered beginning on February 3, 2014, and ending on February 7, 2014, and was first presented to the court and Faden's counsel at the time of the hearing. After the close of evidence, the bankruptcy court set a schedule for post-hearing briefs and concluded the hearing.

Faden's trial summation and closing brief principally challenged the Segals' $20,000 claim for attorney's fees Segal incurred in representing the Segals. Faden argued that attorney's fees for in pro per representation are not recoverable as compensatory damages in a contempt proceeding, and the Segals ultimately conceded this issue and withdrew the damages claim based on Segal's legal services.

Faden also challenged the $7,616 in attorney's fees incurred

8

by Smith in representing the Segals in the contempt proceedings. Faden argued that Smith's fees were completely unnecessary and unreasonable because Faden already had requested dismissal of the cross-complaint as against the Segals at the time Smith began representing the Segals. Faden further argued that Smith's services were partly duplicative of the legal services provided by Segal. Finally, Faden specifically claimed as excessive and unreasonable the 6.6 hours Smith billed as time spent preparing for the evidentiary hearing and the seven hours Smith billed as time spent attending the hearing and in transit to and from the hearing.

The Segals filed a one-sentence post-hearing brief, in which they withdrew their damage claim based on Segal's $20,000 in legal services.

After the parties filed their post-hearing briefs, the bankruptcy court issued a memorandum decision. In it, the court first noted that it already had accepted into evidence, without objection, all of the declarations and exhibits presented by the parties at and before the hearing. The court also reiterated the undisputed facts and factual issues recited in its January 2014 evidentiary hearing notice.

The court supplemented the undisputed facts with findings based on the evidence presented. In relevant part, the court found that Faden violated the discharge injunction by filing the cross-complaint against the Segals, but the court also noted that neither a summons nor the cross-complaint had been served on the Segals in their personal capacities. The court further found that Faden knew of the discharge injunction and its effect on the

9

Faden judgment when he filed the cross-complaint. The court emphasized that Faden's denial of this knowledge was not credible.[5]

With respect to damages, the court noted that the only types of compensatory damages the Segals claimed were for emotional distress and for attorney's fees. The court ruled that the Segals' evidence of the emotional distress Judith allegedly suffered was subject to a fatal deficiency:

> To award emotional distress damages, the Court must find causation between the offending act of Faden - filing the cross complaint - and the distress caused to Judith. The evidence fails to show that causal connection: The cross complaint was not served upon Judith. She only learned about it when Segal showed her a copy which was served on him by mail as attorney for RJS Realty. Faden did not directly cause her distress. The Court cannot award emotional distress damages based on the undisputed evidence.

Mem. Dec. (March 27, 2014) at 9:17-22.

As for attorney's fees, the court rejected Faden's contention that the Segals could not recover any of Smith's attorney's fees because they all were incurred after Faden had advised the Segals that he had filed a request to dismiss them from the cross-complaint. Instead, the court noted that it had

---

[5]The bankruptcy court also rejected Faden's argument that Judith was not protected by the discharge in Segal's bankruptcy case. In so ruling, the court focused on the lack of evidence that Judith had separate property; it thus concluded that the litigation necessarily involved an act against her community property and a violation of the non-debtor spouse discharge injunction. We question this determination as the non-filing spouse discharge injunction protects against collection activity as opposed to liquidation of a debt that may be collectible from non-community assets at any future point in time. Faden, however, failed to raise this point on appeal, so we do not address it further.

discretion to award Smith's fees "as § 105 damages" based on Faden's willful violation of the discharge injunction. The court then stated: "On the facts of this case, the court will award those damages as a sanction for Faden's calous [sic] disregard of the protection the Segals received when Segal's bankruptcy case was discharged." Id. at 10:10-12.

After two paragraphs identifying Faden's conduct supporting the sanctions award, the court summed up by stating: "This egregious and blatant behavior warrants a sanction from this Court. **Unable to award any compensatory damages to Segal and Judith, the Court's decision to award those attorney's fees as a sanction is well-founded**." Id. at 10:24-26 (emphasis added).

On March 28, 2014, the court entered its order awarding $7,616 in contempt sanctions against Faden. The Segals then filed a reconsideration motion seeking to reargue the emotional distress issue, which motion the court denied. Faden timely appealed the bankruptcy court's sanctions order, and the Segals cross-appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(O). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

1. Did the bankruptcy court abuse its discretion when it held Faden in contempt of court and awarded sanctions against him in the amount of $7,616 based on the fees Smith incurred in representing the Segals in the contempt proceedings?

2. Did the bankruptcy court abuse its discretion when it denied

11

the Segals' claim for emotional distress damages?

**STANDARDS OF REVIEW**

The bankruptcy court's decision to impose contempt sanctions for violation of the discharge injunction is reviewed for an abuse of discretion. Nash v. Clark Cnty. Dist. Atty's. Office (In re Nash), 464 B.R. 874, 878 (9th Cir. BAP 2012).

The bankruptcy court abuses its discretion if its decision was based on an incorrect legal rule or its factual findings were illogical, implausible, or without support in the record. Id. (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir.2009) (en banc)).

The bankruptcy court's findings of fact are not clearly erroneous unless they are "illogical, implausible, or without support in the record." Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010).

**DISCUSSION**

A discharge in a bankruptcy case "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [prepetition] debt as a personal liability of the debtor . . . ." § 524(a)(2). The discharge also protects all community property of the debtor and the debtor's spouse acquired after the commencement of the case. § 524(a)(3); see also Rooz v. Kimmel (In re Kimmel), 378 B.R. 630, 635-36 (9th Cir. BAP 2007).

When creditors willfully violate the discharge injunction, they may be held in contempt. See ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.), 450 F.3d 996, 1007 (9th Cir. 2006). For purposes of finding creditors in contempt, the creditors act

12

willfully if they: "(1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction." Id. This is so even if the creditors did not specifically intend to violate the discharge injunction. See Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1191 (9th Cir. 2003).

Faden does not dispute on appeal that, under § 524(a)(2) and (3), he was enjoined from commencing or pursuing legal actions against both Segal and Judith based on his prepetition claim associated with the Faden judgment. Accordingly, we need not address the scope of the injunction under § 524(a)(3) as it applied to Judith's community property interests. See id. at 1182 (stating that appellate court does not need to consider issue not raised on appeal).[6]

However, Faden does challenge on appeal the bankruptcy court's determination that his filing of the cross-complaint naming the Segals as cross-defendants constituted a violation of the discharge injunction sufficient to justify a contempt sanctions award. According to Faden, because he never served the cross-complaint on the Segals, and because the state court never acquired personal jurisdiction over the Segals, his action of filing the cross-complaint was at most a mere "technical" violation of the discharge injunction, which did not justify the imposition of any sanctions award.

We disagree. We have not found any law prohibiting or

---

[6]We also need not address this issue because Faden's violation of § 524(a)(2) was sufficient to support the court's contempt finding.

13

limiting the remedies a court may impose on account of a so-called technical violation of the discharge injunction, and Faden has not cited any. Nor can we narrowly read § 524(a)(2) in the way Faden urges – to permit the filing of his cross-complaint against Segal – without departing from the plain meaning of the statute's clear language.

Moreover, the bankruptcy court considered the nature and impact of Faden's violative conduct before it determined the extent to which sanctions should be imposed against Faden. Thus, the bankruptcy court's ruling already accounted for the limited nature of Faden's discharge injunction violation.

Faden alternately argues on appeal that the bankruptcy court did not find, as required, that he "actually knew" of the discharge injunction. In essence, Faden contends that the court only found that he had constructive or imputed knowledge of the discharge injunction. Because the court based its knowledge finding in part on circumstantial evidence and in part on the application of the "mailbox rule," Faden reasons that the court could not have correctly found that he actually knew about the discharge in Segal's bankruptcy case.

Before imposing contempt sanctions for violation of the discharge injunction, the bankruptcy court needed to find, among other things, that Faden actually knew of the discharge injunction. In re ZiLOG, Inc., 450 F.3d at 1007. Faden's actual knowledge of the discharge injunction was a question of fact, id. at 1007-08, and the bankruptcy court here unequivocally found that Faden actually knew of the discharge injunction. In relevant part, the bankruptcy court explicitly found that Faden's

14

"ignorance of the discharge is feigned" and that Faden's declaration testimony that he did not know of the bankruptcy discharge was "not credible." Bk Ct. Mem. Dec. (March 28, 2014) at 6:2-8. Furthermore, the court explicitly found "based on circumstantial evidence that Faden knew of the discharge and the imposition of an injunction against collection of a discharged debt." Id. at 7:22-23.

Faden's argument attacking the bankruptcy court's knowledge finding lacks merit. It is common for the trier of fact to rely on circumstantial evidence to resolve factual issues bearing on a party's state of mind. See, e.g., In re Zilog, Inc., 450 F.3d at 1008; United States v. Sullivan, 522 F.3d 967, 974 (9th Cir. 2008). Indeed, absent an admission, circumstantial evidence typically is the only means by which a party may prove another party's state of mind.

As for the bankruptcy court's invocation of the mailbox rule, we perceive no error. The mailbox rule creates a rebuttable presumption that documents duly served by mail have been received by the addressee at the address stated in the proof of service. See Schikore v. BankAmerica Supp. Ret. Plan, 269 F.3d 956, 961 (9th Cir. 2001) (citing Hagner v. United States, 285 U.S. 427, 430 (1932)). To overcome the mailbox rule presumption, the party served ordinarily must present something more than a bald denial of receipt. See Berry v. U.S. Trustee (In re Sustaita), 438 B.R. 198, 209 (9th Cir. BAP 2010), aff'd, 460 Fed.Appx. 627 (9th Cir. 2011).

Here, the bankruptcy court correctly invoked the mailbox rule. Based on the court's records regarding the mailing of the

15

discharge order, the court presumed that Faden received written notice of the discharge, and Faden did nothing to counter that presumption except to deny receipt of that notice.

In any event, the court's finding regarding Faden's actual knowledge was not based solely on the mailbox rule, but rather on the entirety of the circumstances. In making its knowledge finding, the court noted the critical and active role Faden played as a petitioning creditor in Segal's bankruptcy case, and the fact that Faden as a petitioning creditor had been included in the court's mailing matrix from and after the commencement of the case in 2008. The court further inferred that Faden understood the effect the discharge would have on his right to enforce the Faden judgment, as he conveyed the Faden judgment to Silberstein so that Silberstein could bring an adversary proceeding attempting to except the Faden judgment from Segal's discharge. That adversary proceeding was unsuccessful. On these facts, we cannot say that the bankruptcy court's finding regarding Faden's actual knowledge of the discharge injunction was illogical, implausible or without support in the record. In re Retz, 606 F.3d at 1196.

Even if we were to discern some error in the bankruptcy court's actual knowledge finding (which we do not), Faden has admitted that he received Segal's order to show cause motion. As a result, Faden indisputably knew of the discharge injunction on and after his receipt of this motion, and he had an ongoing and affirmative duty after that point to unwind the effects of his discharge injunction violation. See In re Dyer, 322 F.3d at 1192.

16

In spite of this duty, instead of taking immediate action to remedy his violative conduct, Faden responded to Segal's order to show cause motion by denying that he had knowingly violated the discharge injunction and also by arguing that his actions were justified by Segal's alleged misconduct in the state court litigation and in the transactions leading up to the state court litigation. In fact, it took Faden nearly three months to take the simple step of dismissing the cross-complaint as against the Segals, and he finally did so only a few days before the evidentiary hearing on the contempt motion. Faden's knowledge of the discharge injunction on and after his admitted receipt of Segal's order to show cause motion and Faden's failure to expeditiously dismiss out the Segals from his cross-complaint dispels any doubt regarding Faden having the requisite knowledge for the bankruptcy court to hold him in contempt for violation of the discharge injunction. See Id.

A bankruptcy court may award sanctions for a violation of the discharge injunction under the court's contempt power. In re ZiLOG, Inc., 450 F.3d at 1007 (citing § 105). Civil contempt sanctions may be either compensatory or coercive in nature. In re Dyer, 322 F.3d at 1192. The sanctions are compensatory only if they reimburse the injured party for losses suffered as a result of the sanctionable conduct. Gen. Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1380 (9th Cir. 1986) (citing Shuffler v. Heritage Bank, 720 F.2d 1141, 1148 (9th Cir. 1983)). If the sanctions are not compensatory and instead are aimed at deterring future or continued contumacy, they may be coercive in nature, In re Dyer, 322 F.3d at 1192, but such

17

coercive civil contempt sanctions must afford the contemnor some opportunity to reduce or avoid the sanction.  Id.  If there is no such opportunity, a flat, unconditional, noncompensatory fine for willfully violating a court order is considered to be a punitive or criminal contempt sanction.  Id.

Bankruptcy courts are not authorized to award "serious" criminal contempt sanctions, but "relatively mild" non-compensatory fines may be permissible under some circumstances, especially when there is no other practicable means of addressing the contumacious conduct.  Id. at 1193 & n.16.  Under no circumstances should the relatively mild non-compensatory fine exceed several thousand dollars.  Id.

The bankruptcy court imposed against Faden a sanctions award of $7,616, payable to the Segals.  The court made it clear that the amount of the sanctions award was based on the attorney's fees Smith billed for the services he performed in relation to the contempt proceedings, beginning on February 3, 2014, and ending on February 7, 2014.  On appeal, Faden argues that the amount of the award was an abuse of discretion under three distinct theories: (1) the fees billed were "completely unnecessary and unreasonable" because they were needlessly incurred after the Segals and Smith had been notified that Faden had remedied his discharge injunction violation by requesting dismissal of the cross-complaint as against the Segals; (2) Smith's fees were duplicative of the fees claimed by Segal in the contempt proceedings; and (3) the court did not make any evaluation or findings regarding the reasonableness of the fees Smith claimed.  We will address each of these theories in turn.

18

We reject Faden's theory that the Segals' entitlement to recover fees ceased upon Faden dismissing the Segals from the cross-complaint. Faden cited no legal authority to support this theory. Moreover, we agree with the bankruptcy court's well-reasoned analysis of this issue. Citing Sternberg v. Johnston, 595 F.3d 937, 945-48 (9th Cir. 2010), the bankruptcy court acknowledged that, in an adversary proceeding brought pursuant to § 362(k), the debtor cannot claim as an element of damages fees incurred after the stay or discharge injunction violation has been undone. On the other hand, the bankruptcy court pointed out that its contempt powers are not so limited. See Rediger Inves. Servs. v. H Granados Commc'ns, Inc. (In re H Granados Commc'ns, Inc.), 503 B.R. 726, 734–35 (9th Cir. BAP 2013).

In re H Granados Commc'ns, Inc. stands for the proposition that a bankruptcy court may include in its compensatory civil contempt award reasonable attorney's fees incurred during the entirety of the contempt proceedings – even those incurred after the violative conduct has been set aside. In this respect, In re H Granados Commc'ns, Inc. is consistent with the Ninth Circuit's broad general statements regarding the injured party's entitlement to recover attorney's fees as an element of compensatory civil contempt sanctions. See, e.g., In re Dyer, 322 F.3d at 1195 ("attorneys fees are an appropriate component of a civil contempt award"); Perry v. O'Donnell, 759 F.2d 702, 705 (9th Cir. 1985) ("an award of fees and expenses is appropriate as a remedial measure"). Simply put, neither Dyer nor Perry nor any other Ninth Circuit decision we know of has refused to award fees as part of a compensatory civil contempt sanctions award because

19

those fees were incurred in the contempt proceedings after the violative conduct had been remediated.

As for Faden's theory that Smith's fees were duplicative of those incurred by Segal while Segal was representing himself in the contempt proceedings, we can quickly dispose of this theory. It makes no sense for Faden to complain of this duplication of effort when none of Segal's attorney's fees incurred in representing himself were awarded against Faden. Put another way, Faden lacks standing on appeal to complain regarding any duplication of effort between Segal and Smith because any such duplication of effort did not adversely affect him pecuniarily. See generally Fondiller v. Robertson (In re Fondiller), 707 F.2d 441, 442 (9th Cir. 1983) ("Only those persons who are directly and adversely affected pecuniarily by an order of the bankruptcy court have been held to have standing to appeal that order.").

Faden's third theory, that the bankruptcy court did not evaluate the reasonableness of Smith's fees, requires greater thought. Generally speaking, a compensatory civil contempt fee award should be supported by a reasonableness finding. Perry, 759 F.2d at 706. Furthermore, in assessing the reasonableness of such fees, a court typically must consider factors like those articulated in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975).[7] See Perry, 759 F.2d at 706. While some Ninth

---

[7] Kerr listed the following factors to be considered: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee,
(continued...)

20

Circuit decisions subsequent to Kerr have indicated that slavish adherence to a rigid and formulaic recitation of the Kerr factors is not a prerequisite to a fee award, Brown v. Baden (In re Yagman), 796 F.2d 1165, 1184 (9th Cir. 1986), amended by 803 F.2d 1085 (1986), "the court must make some evaluation of the fee breakdown submitted by counsel." Id.

The contemnor may forfeit the reasonableness issue if he or she does not raise it in the trial court, Perry, 759 F.2d at 706, but Faden here sufficiently raised the reasonableness issue to preserve it for appeal. More specifically, Faden argued the reasonableness of Smith's fees in the post-trial brief the bankruptcy court authorized Faden to file. Even though most of Faden's reasonableness argument in his post-trial brief was dedicated to his first two theories, discussed above, that we already have rejected, Faden also contended that some of Smith's specific time entries were excessive under the circumstances.

We consider Faden's raising of the reasonableness issue in

---

[7](...continued)
(6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. Id. at 70.

The Supreme Court has explicitly rejected consideration of at least one of these factors – the factor regarding whether the fee is fixed or contingent. See City of Burlington v. Dague, 505 U.S. 557, 567 (1992). Additionally, a number of courts have indicated that the lodestar method of evaluating fees has replaced and/or subsumed most of the Kerr factors. See, e.g., Gonzalez v. City of Maywood, 729 F.3d 1196, 1204 n.3 (9th Cir. 2013).

21

his post-trial brief timely because the record indicates that Smith's invoice was not made available to Faden for review until the day of the evidentiary hearing. On this record, we hold that Faden sufficiently preserved the reasonableness issue for appellate review.

Even though the bankruptcy court did not explicitly address the reasonableness issue, we arguably could conclude that the court implicitly found Smith's fees to be reasonable. Both the relatively small amount of fees involved ($7,616) and the limited effort Faden devoted to addressing the reasonableness issue could support a conclusion that the court found it unnecessary to make an explicit reasonableness finding. Indeed, Faden concedes in his appeal brief that an explicit reasonableness finding is not always required. See Aplt. Opn. Br. at p. 13 (citing Lloyd v. Schlag, 884 F.2d 409, 413 (9th Cir. 1989)).

Moreover, bankruptcy courts have extensive experience in approving the reasonableness of fees in conjunction with professional fee applications filed under § 330, as well as in adversary proceedings in which fee shifting statutes and contractual attorney's fee provisions often come into play. These fee issues, some of them involving hundreds of thousands of dollars in requested fees, are routinely scrutinized by the bankruptcy court under the "loadstar approach," which subsumes many of the Kerr factors. See Gonzalez, 729 F.3d at 1204 n.3. Under these circumstances, we might assume that, at a glance, the bankruptcy court here was able to implicitly find that the $7,616 in fees claimed by Smith were reasonable.

Nonetheless, there are at least a couple aspects of the

22

bankruptcy court's fees ruling that prevent us from affirming that ruling based on the notion that the bankruptcy court implicitly found Smith's fees to be reasonable. One aspect that concerns us is the need for the bankruptcy court to parse Smith's fees to identify those that flowed from Faden's violation of the discharge injunction and those that did not. As explained in In re Dyer, only those fees flowing from the contumacious conduct can be awarded as part of a compensatory civil contempt sanctions award. Id. at 1195. In fact, In re Dyer ruled that a remand was necessary so that the bankruptcy court could make precisely that type of determination. Id.

Here, as we discuss below, the bankruptcy court found that the Segals failed to prove that they suffered any emotional distress as a result of Faden's contumacious conduct. Yet the record reflects that a significant portion of Smith's fees were incurred attempting to elicit from the Segals testimony regarding Judith's emotional distress. If the emotional distress did not flow from Faden's discharge injunction violation, how is it that the bankruptcy court could find that Smith's services aimed at presenting emotional distress evidence flowed from Faden's discharge injunction violation? Without a finding of a causal link between the fees incurred and the contumacious conduct, the fees are not properly part of a compensatory civil contempt sanctions award. In re Dyer, 322 F.3d at 1195.

The other aspect of the fees ruling that concerns us pertains to some of the statements the bankruptcy court made in the process of imposing the $7,616 in sanctions. Among other things, the court stated: "On the facts of this case, the court

23

will award those damages [Smith's fees] as a sanction for Faden's calous [sic] disregard of the protection the Segals received when Segal's bankruptcy case was discharged." Mem. Dec. (March 28, 2014) at 10:10-12. The court further stated: "This egregious and blatant behavior warrants a sanction from this Court. **Unable to award any compensatory damages to Segal and Judith, the Court's decision to award those attorney's fees as a sanction is well-founded**." Mem. Dec. (March 28, 2014) at 10:24-26 (emphasis added).

These statements, especially the latter one, perhaps suggest that the bankruptcy court intended its fee award to constitute a flat, unconditional, noncompensatory fine on account of Faden's contumacious conduct. However, if the court intended the $7,616 in sanctions to be a relatively minor punitive sanction, we have a different set of concerns. For instance, whether or not a punitive sanction should be considered serious depends in part on the financial condition of the sanctioned party. See F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc., 244 F.3d 1128, 1140 n.10 (9th Cir. 2001). In other words, the seriousness of the sanction award depends in part on whether the sanctioned party is a multinational corporation, an impoverished debtor or something in between. Here, the bankruptcy court made no finding regarding Faden's financial condition. The absence of a finding on the seriousness of the sanction or on Faden's financial condition makes us hesitant to conclude that the bankruptcy court intended to impose a noncompensatory fine.

Furthermore, the court's findings were not 100% clear on the mental state accompanying Faden's violation of the discharge

24

injunction. Even though a finding that the contemnor intentionally violated the court's order is not necessary to support a civil contempt sanctions award, In re Dyer, 322 F.3d at 1191, a punitive or criminal contempt sanctions award – even a minor one – should be supported by a finding that the contemnor violated the court's order intentionally or in bad faith. See Perry, 759 F.2d at 705; see also Zambrano v. City of Tustin, 885 F.2d 1473, 1482 (9th Cir. 1989). Here, the bankruptcy court referred to Faden's violation of the discharge injunction as "willful," "egregious," "blatant" and in "calous [sic] disregard" of the discharge order, but the bankruptcy court did not find that the discharge injunction violation was either intentional or in bad faith.

There are a handful of other questions that a bankruptcy court ordinarily should answer before imposing a noncompensatory fine as a remedy for violation of the court's order. See Zambrano, 885 F.2d at 1480. These factors include: (1) whether the fine is consistent with applicable statutes and rules; (2) whether the fine is necessary to support the proper functioning of the court; (3) whether the fine is proportionate to the offense; and (4) whether the fine is consistent with the interests of justice. Id.; accord, In re 1601 W. Sunnyside Dr. #106, LLC, 2010 WL 5481080, at *6-7 (Bankr. D. Idaho 2010). We are not saying that explicit findings on these questions are necessary every time the bankruptcy court imposes a non-compensatory fine, but we are saying that the absence here of explicit findings addressing these issues further calls into question whether the bankruptcy court intended to impose a minor

25

punitive sanction or a compensatory civil contempt sanction.

In sum, we cannot tell from the bankruptcy court's memorandum decision or the entirety of the record whether the bankruptcy court intended the $7,616 in sanctions to be a compensatory civil contempt sanctions award or a minor punitive contempt sanctions award. Either way, there are a number factors that ordinarily must be considered. Because there is insufficient indication in the court's memorandum decision that it implicitly addressed these factors, we cannot uphold the $7,616 in sanctions as either a compensatory civil contempt sanctions award or as a minor punitive contempt sanctions award.

The bankruptcy court needs to make sufficient findings to support its ruling, and when there are insufficient findings, we must vacate and remand for further findings. Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 919-20 (9th Cir. BAP 2011). On remand, the bankruptcy court will be free to re-open the record to address the issues we have referenced in this decision, or the bankruptcy court may address them without reopening the record. The bankruptcy court also may choose to adjust its sanctions award either upwards or downwards depending on what its findings support.

The only remaining issue that we must address is the sole issue raised in the Segals' cross-appeal. The Segals contend that the bankruptcy court erred when it ruled that Judith was not entitled to emotional distress damages. Neither party disputes on appeal the bankruptcy court's holding that a court may award emotional distress damages as an element of a compensatory civil contempt sanctions award. See Dawson v. Washington Mutual Bank

(In re Dawson), 390 F.3d 1139, 1148 (9th Cir. 2004).  Nor does either party dispute that, in proving up an emotional distress claim, an individual must:

> (1) suffer significant harm, (2) clearly establish the significant harm, and (3) **demonstrate a causal connection between that significant harm and the violation of the automatic stay** (as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process).

Id. at 1149 (emphasis added).  The Segals take issue with the bankruptcy court's finding that Judith's emotional distress was not caused by Faden's violative conduct – the filing of the cross-complaint.

A party seeking compensatory damages for contempt must demonstrate that those damages occurred as a result of the contumacious conduct.  Gen. Signal Corp., 787 F.2d at 1380; Shuffler, 720 F.2d at 1148; see also In re Dawson, 390 F.3d at 1150 (stating that the causal link between the emotional distress and the contumacious conduct must be "clearly established or readily apparent").  Some courts have stated the causation rule even more emphatically, effectively holding that compensatory contempt sanctions are limited to damages directly resulting from the contumacious conduct.  See, e.g., Valdez v. Kismet Acquisition, LLC, 474 B.R. 907, 922-23 (S.D. Cal. 2012), aff'd, 567 Fed. Appx. 517 (9th Cir. 2014); Lovell v. Evergreen Resources, Inc., 1995 WL 761269, at *3 (N.D. Cal. 1995).

It suffices for us to say that the record supports the bankruptcy court's finding that the Segals did not adequately demonstrate the required causal link between Judith's emotional distress and Faden's violative conduct.  While the court

generally credited the Segals' testimony regarding Judith's emotional distress, the court ultimately inferred from the facts in the record that Faden's violative conduct did not cause Judith's emotional distress. We cannot say that this inference was illogical, implausible or without support in the record. In re Retz, 606 F.3d at 1196.[8]

Citing California Supreme Court decisions and the Restatement of the Law of Torts, the Segals assert that the bankruptcy court misapplied causation doctrine. However, we are not dealing with a state law issue or a tort issue. We are dealing with a creditor's failure to comply with federal law and a bankruptcy court's order. None of the cases we have cited herein have looked to state law or tort law to resolve questions concerning causation and damages arising from contempt of court. Nor are we aware of any federal cases doing so. See generally Henry v. Assocs. Equity Home Servs. (In re Henry), 266 B.R. 457, 480 (Bankr. C.D. Cal. 2001) (holding that contempt proceedings are not equivalent to tort actions for purposes of determining damages).

In short, we disagree with the Segals' causation argument, and we decline their invitation to apply California Supreme court precedent and the common law of torts to a federal proceeding concerning contempt of court.

## CONCLUSION

For the reasons set forth above we AFFIRM the bankruptcy

---

[8]And given our concerns about the existence of any discharge violation as to Judith, we also note that any error in the court's causation analysis would be harmless.

28

court's contempt finding and its denial of emotional distress damages. However, we VACATE the bankruptcy court's sanctions award and REMAND for further findings on that issue.

Concurring decision begins on next page.

Taylor, Bankruptcy Judge, concurring:

I concur in the result reached by the Panel. I write separately, however, because I do not question the basis for the bankruptcy court's sanction award. A bankruptcy court may award attorney's fees as part of a civil contempt sanction award for violation of the discharge injunction. See Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 507 (9th Cir. 2002) ("[C]ompensatory civil contempt allows an aggrieved debtor to obtain compensatory damages, **attorneys fees**, and the offending creditor's compliance with the discharge injunction.") (emphasis added); Nash v. Clark Cnty. Dist. Attys' Office (In re Nash), 464 B.R. 874, 880 (9th Cir. BAP 2012) ("If a bankruptcy court finds that a party has willfully violated the discharge injunction, the court may award actual damages, punitive damages and **attorney's fees** to the debtor.") (emphasis added). Based on Walls and Nash, a bankruptcy court appropriately may award attorney's fees as an independent sanction for a discharge injunction violation, even in the rare absence of actual damages.

Here, based on the bankruptcy court's comments at the hearing, I firmly believe that it appropriately awarded attorney's fees to Segal as a sanction against Faden and that it was not a purely punitive sanction. Nonetheless, I also agree that an award of attorney's fees must be reasonable. Given that some of the attorney's fees were incurred in connection with Judith's emotional distress claim, remand is necessary so that the bankruptcy court may conduct a reasonableness analysis.

1