# United States Court of Appeals
## For the First Circuit

No. 08-2327

UNITED STATES OF AMERICA,

Appellee,

v.

HUSSEIN AL-RIKABI,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Torruella, Selya and Howard, Circuit Judges.

Peter E. Rodway on brief for appellant.
Paula D. Silsby, United States Attorney, and Margaret D. McGaughey, Appellate Chief, on brief for appellee.

May 28, 2010

**SELYA**, **Circuit Judge**.  Defendant-appellant Hussein Al-Rikabi challenges a managerial role enhancement that increased his guideline sentencing range and, thus, paved the way for a stiffer sentence.  Concluding, as we do, that the adjustment is unsupported by the record, we vacate the sentence and remand for resentencing.

The procedural setting is mundane.  Following a short trial in March of 2008, a jury convicted the appellant of one count of conspiracy to possess narcotics (crack cocaine) with intent to distribute and two subsumed specific-offense counts.  See 21 U.S.C. §§ 841(a)(1), 846.  A two-day sentencing hearing concluded on October 15, 2008.  In calculating the guideline sentencing range (GSR), the court augmented the base offense level by two levels, finding that the appellant had exercised managerial authority over another participant in the criminal activity.  See USSG §3B1.1(c).  This adjusted offense level, combined with the appellant's criminal history category (I), yielded a GSR of 151-188 months.  The court imposed a 151-month incarcerative sentence.

Against this backdrop, we turn to the record (the court received no new role-in-the-offense evidence at sentencing but, rather, relied on evidence adduced at trial).  The record reveals that the appellant supplied drugs to Dioseline Gabelino, who then sold them to an undercover agent (UA).[1]  The evidence relevant to

---

[1] Gabelino was indicted along with the appellant, but they were not tried together.

the issue on appeal is limited to recordings of meetings and intercepted telephone calls, trial testimony of the appellant and UA, and officers' observations made during ongoing surveillances of the actual sales.

This evidence reflected two transactions, both occurring in the summer of 2007; one took place on July 25 and the other on August 17. The genesis and logistics of those transactions are central to our inquiry.

On July 25, UA approached Gabelino and sought to buy $700 worth of crack. Because Gabelino did not have a sufficient supply of drugs on hand, she contacted the appellant. The pair arranged to meet. Transcripts of the calls made to set up the meeting show that Gabelino asked for a half-ounce of crack, told the appellant to call her back because she was busy, called again to ascertain the appellant's whereabouts, and finally agreed to meet him at a location that he suggested (a parking lot).

Later, the two met and got into a car with UA. The appellant produced two bags of crack and gave them to Gabelino, who handed them to UA. UA paid the appellant, who kept the whole payment. After the transaction was fully consummated, UA paid Gabelino a $50 fee for arranging the sale.

The second sale proceeded in a somewhat similar manner. Gabelino received a call from UA, who asked for $3,000 worth of crack (a dollar amount that UA subsequently reduced to $1,500). To

fill the order, Gabelino contacted the appellant. The two haggled over the quantity of crack to be delivered. The appellant suggested that they rendezvous at a particular place. Gabelino insisted that they put off any meeting, saying that she would contact the appellant when she was ready. The appellant told her that she could call him at any time.

Eventually, a meeting was arranged. Gabelino and UA drove to the agreed site — a supermarket — to join the appellant. When the appellant was late, Gabelino called him twice to find out where he was. After the appellant made his belated entrance, he and Gabelino met inside the supermarket. At that time, the appellant swapped a quantity of crack for cash that UA had given to Gabelino. The appellant pocketed the cash.

Gabelino then approached UA (who was standing nearby), opened her purse, and allowed him to take the contraband. UA paid Gabelino $100 for facilitating the purchase.

The appellant testified at trial, but he was not queried about the nature of his relationship with Gabelino. UA also testified; he was not asked about the relationship between Gabelino and the appellant. Gabelino did not testify. The recordings of calls and conversations touched obliquely on that relationship but were not in any way definitive. No other evidence shed any light on either the relationship between Gabelino and the appellant or their relative status.

The presentence investigation report (PSI Report) stated, in an essentially conclusory fashion, that the appellant "held a managerial role over . . . Dioseline Gabelino." The probation department reasoned that "Gabelino acted as a 'go-between' for the [appellant] and the buyer" and that "Gabelino took direction" from the appellant. In this regard, the probation department attached weight to the fact that the appellant "retained the entire profits generated from the transactions."

The sentencing court recognized the narrowness of the evidentiary base, but it nevertheless found a managerial role adjustment appropriate. In making this determination, the court stated that it took into account "the evidence heard at trial, [the appellant's] direction to Gabelino, how she was to accomplish her part of the transaction[s], and the nature of their participation with each other where he was clearly in command." And like the probation department, the court looked to the "division of the proceeds" as a telltale factor.

The issue anent the validity of the enhancement is squarely joined. In the court below, the appellant persistently objected to it. On appeal, he renews that objection, continuing to argue that the enhancement is not supported by the evidence. We review factual determinations made by a sentencing court for clear error. United States v. Mateo, 271 F.3d 11, 13 (1st Cir. 2001); United States v. Cruz, 120 F.3d 1, 3 (1st Cir. 1997) (en banc).

Where, as here, the finding involves the reasonableness of inferences drawn from an essentially undisputed nucleus of operative facts, the clear-error standard applies. See United States v. McDonald, 121 F.3d 7, 9 (1st Cir. 1997); Cruz, 120 F.3d at 3.

The pertinent guideline prescribes a two-level upward role-in-the-offense adjustment for any offender who "was an organizer, leader, manager, or supervisor in any criminal activity" involving one to three other participants. USSG §3B1.1(c). The enhancement, therefore, has two elements; to warrant its use, the sentencing court must supportably find that (i) the criminal activity involved at least two, but fewer than five, complicit individuals (the defendant included); and (ii) in committing the offense, the defendant exercised control over, managed, organized, or superintended the activities of at least one other participant. Cruz, 120 F.3d at 3; United States v. Savoie, 985 F.2d 612, 616 (1st Cir. 1993).

The government bears the burden of proving that an upward role-in-the-offense adjustment is appropriate in a given case. Cruz, 120 F.3d at 3. It must carry that burden by preponderant evidence. Id.

In this instance, the first element needed for the enhancement is present. The record shows with conspicuous clarity that fewer than five miscreants, including Gabelino and the

-6-

appellant, perpetrated the crimes. Consequently, the lens of our inquiry narrows to focus on the element of control.

Drawing all <u>reasonable</u> inferences in the light most favorable to the challenged finding, the scenario here is not one in which the government can be said to have carried its burden. To begin, the record is notable for what it does not contain. There is no proof of orders given and obeyed. There is no proof that the appellant paid Gabelino for her services. There is no proof of either a committed relationship or an exclusive course of dealing.[2] In fine, there is no proof that Gabelino was either subservient to the appellant or subject to his hegemony.

What evidence there is suggests that Gabelino acted as a free agent, dealing with the appellant as any street-level seller would deal with a source of supply. While sellers sometimes work for their suppliers in the drug trade, that is not an inevitable concomitant of such a relationship — any more than, say, a hot dog vendor on a street corner necessarily would be thought to be a minion of Oscar Mayer.

The case law makes pellucid that more than shared criminal activity is needed to give rise to a managerial role adjustment. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Picanso</u>, 333 F.3d 21, 24 (1st Cir. 2003); <u>United States</u> v. <u>Fuller</u>, 897 F.2d 1217, 1220-21

---

[2] Indeed, once the authorities apprehended the appellant, Gabelino simply called another supplier to enable her to satisfy UA's continuing requests to purchase crack.

-7-

(1st Cir. 1990). There must be some additional fact or facts that will permit a factfinder to draw a founded inference about the nature of the particular relationship. In the absence of any such data, the government cannot be said to have carried the devoir of persuasion as to control.

That Gabelino and the appellant cooperated to arrange meeting times and places does not furnish the missing link. Each collaborated when it seemed to his or her advantage to do so, but nothing about this collaboration shows that one managed, directed, or supervised the other. See Picanso, 333 F.3d at 24; United States v. Castellone, 985 F.2d 21, 26 (1st Cir. 1993). The same can be said of the fact that the two agreed, on a sale-by-sale basis, to drug quantity and pricing. See United States v. Flores-De-Jesús, 569 F.3d 8, 35 (1st Cir. 2009); Picanso, 333 F.3d at 24.

In the last analysis, the sparse record leaves too much to guesswork. Although the record shows that Gabelino and the appellant were working hand in glove, it does not contain any significantly probative evidence of their relative status on which a sentencing court could ground a supportable inference that the former was subordinate to the latter in a chain of command. See United States v. Ramos-Paulino, 488 F.3d 459, 464 (1st Cir. 2007).

The sentencing court's contrary finding is unsupported. Although the court said that Gabelino took "direction" from the appellant, the record is utterly barren of any evidence to that

effect. What little evidence there is points the opposite way. It was Gabelino, independently, who discovered the customer and agreed to furnish him with crack. It was the customer, not the appellant, who remunerated Gabelino for her services.

The sentencing court also said, without elaboration, that "how [Gabelino] was to accomplish her part of the transaction[s] and the nature of [the parties'] participation with each other" demonstrated that the appellant "was clearly in command." The evidence does not support this characterization. Gabelino and the appellant each performed particular steps in the criminal pavane, and the allocation of functions is not probative of a relationship in which one actor was directed by the other. Cf. United States v. García-Pastrana, 584 F.3d 351, 393 (1st Cir. 2009) (finding sufficient evidence of managerial role where defendant recruited codefendants).

Fairly viewed, the conversations between the principals indicate that Gabelino did not answer to the appellant. For example, Gabelino did not hesitate to tell the appellant that she was busy and would contact him when she was ready to proceed with their business. Similarly, she did not hesitate to haggle with him over quantities. These are hardly the responses that one would expect a subordinate to make to the person in charge of a joint enterprise. See Ramos-Paulino, 488 F.3d at 464.

To be sure, the probation department suggested in the PSI Report that Gabelino acted as a "go-between." But that description has very little bearing on the issue of control. Even if the appellation is an accurate descriptor, it begs the question. Whether or not Gabelino acted as a go-between, there is no evidence that she acted under the management, supervision, or control of the appellant.

This leaves what the district court called "the division of proceeds" — an apparent reference to the appellant's retention of UA's payments. But there was no "division" of those proceeds; for aught that appears, the appellant kept them all. Gabelino, on the other hand, was paid fees directly by her buyer. That two wrongdoers are compensated differently for their respective roles in a shared criminal activity may in some situations be significant as to their relative status. See, e.g., Savoie, 985 F.2d at 616. Here, however, there is no evidence of the appellant's profit margins and, thus, no sound basis for drawing an inference that relative compensation is an indicium of control.[3]

We need go no further. In the absence of any significantly probative evidence, direct or circumstantial, about the nature of the hierarchical relationship, if any, between the

---

[3] The government's suggestion that the appellant took all the proceeds because of a prior debt that Gabelino owed to him, Gov't Br. at 29, rests on a premise that is not verifiable from the record. In all events, the district court made no finding to that effect.

appellant and Gabelino, the finding that the appellant occupied a managerial role is clearly erroneous.  Without that finding and the consequent enhancement, the appellant's sentence cannot stand.  Thus, we vacate the sentence and remand for resentencing consistent with this opinion.

**<u>Vacated and remanded</u>**.