FILED

JUN 01 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   CC-14-1361-TaPaKi |
| ) | |
| JESUS BENCOMO, ) | Bk. No.   13-11245-BR |
| ) | |
| Debtor. ) | Adv. No.   13-01451-BR |
| _____ ) | |
| ) | |
| JESUS BENCOMO, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| WESLEY HOWARD AVERY, ) | |
| Chapter 7 Trustee; UNITED ) | |
| STATES TRUSTEE, ) | |
| ) | |
| Appellees. ) | |
| _____ ) | |

Argued and Submitted on March 19, 2015
at Pasadena, California

Filed - June 1, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Barry Russell, Bankruptcy Judge, Presiding

Appearances:   Glenn Ward Calsada of the Law Offices of Glenn
                Ward Calsada argued for appellant; Stella A.
                Havkin of Havkin & Shrago argued for appellee.

Before:  TAYLOR, PAPPAS, and KIRSCHER, Bankruptcy Judges.

_____

     [*]   This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8024-1(c)(2).

Chapter 7[1] debtor Jesus Bencomo appeals from a judgment denying his bankruptcy discharge pursuant to § 727(a)(4)(A). We determine that the bankruptcy court did not err when it included the Debtor's misconduct in a prior bankruptcy as a basis for its decision. The bankruptcy court, however, did not make findings that allow us to review how it resolved the Debtor's objections to the admissibility of expert testimony from the bankruptcy trustee's sole witness. As a result, we VACATE the judgment and REMAND the case to the bankruptcy court.

## FACTS

The Debtor filed a chapter 7 petition on January 16, 2013. Wesley H. Avery was appointed as the chapter 7 trustee ("Trustee"). The bankruptcy case was the Debtor's second. He filed a chapter 7 petition in May of 1998 and received a discharge three months later.

In the second case, the Debtor scheduled real property located in Norwalk, California (the "Property") at a value of $175,000.[2] He also scheduled a $145,879 claim secured by the Property and claimed a $29,121 exemption in the Property under

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure, all "Civil Rule" references are to the Federal Rules of Civil Procedure, and all "Evidence Rule" references are to the Federal Rules of Evidence.

[2] We exercise our discretion to take judicial notice of documents electronically filed in the adversary proceeding and the underlying bankruptcy case. See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

state law.

Following the § 341(a) meeting of creditors, the Trustee filed an application to employ Re/Max of Santa Clarita and Miguel Soler as the broker for the estate preparatory to marketing and selling the Property. The employment application asserted that the actual current value of the Property was between $305,000 and $333,000. Thus, even if the Debtor claimed the maximum statutory exemption against the Property, the Trustee estimated a net realization for the estate of between $60,000 and $86,000.

Two weeks later, the Debtor amended his schedules; he increased the scheduled value of the Property from $175,000 to $245,000 and the amount of the claim secured by the Property from $145,879 to $214,929.27. He also increased his claimed exemption from $29,121 to $100,000.

The Debtor also opposed the Trustee's application to employ a broker. Following various continued hearings, the bankruptcy court entered an order granting the employment application.

Meanwhile, the Trustee commenced an adversary proceeding against the Debtor, objecting to his bankruptcy discharge under § 727(a)(2)(A) and (a)(4)(A). As relevant to this appeal, the adversary complaint alleged that the Debtor was a longtime real estate professional and, as a result, knew that at the time of the filing of the petition the value of the Property was in the $300,000 range, rather than $175,000 as initially scheduled. The adversary complaint also alleged that the Debtor knowingly and fraudulently "severely undervalued" the Property in his schedules.

3

The bankruptcy court entered the parties' joint pretrial conference order; it disclosed Soler and the Debtor as the Trustee's intended witnesses at trial. Pursuant to another bankruptcy court order, Soler provided his direct testimony by declaration.

In his declaration, Soler attested that he was a licensed real estate agent and specialized in residential real estate sales. Soler opined that the value of the Property was at least $305,000 at the time of the petition, based initially on a review of multiple listings in the area; he confirmed his opinion almost a year later by a physical inspection.

The Debtor objected to Soler's declaration and moved to strike his testimony. He disputed Soler's qualifications and the methodology Soler employed in rendering his opinion that the Property was valued at $305,000. The Debtor particularly challenged Soler's failure to provide a written report or to identify the sources of data used to render the $305,000 value. As a result, the Debtor complained that he was hindered from evaluating the accuracy and completeness of Soler's analysis.

The bankruptcy court held a one-day trial on June 17, 2014. Both the Debtor and Soler provided additional testimony.

The Debtor, over his counsel's objections, responded to the Trustee's specific inquiries regarding several prior transfers of the Property. He testified that within a two-week period in December 1996, there were three transfers of the Property: from the previous owner to him, then from him to a third party, and finally from the third party back to him. The last deed transferring the Property back to the Debtor remained in his

4

possession for approximately six years, without recordation, until he finally recorded the deed in 2002. He acknowledged that he did not disclose the Property in his 1998 chapter 7 case.

At the conclusion of trial, the bankruptcy court recognized that it was a close case; nonetheless, it sustained the Trustee's objection to discharge under § 727(a)(4)(A) based on the Debtor's undervaluation of the Property in his schedules.

The bankruptcy court found that the value of the Property was "significantly higher" than $175,000. It also found that the Debtor knew that he undervalued the Property. Conversely, the bankruptcy court found credible the testimony of Soler, as the Trustee's "qualified expert"; Soler both attacked the Debtor's value and valuation methodology and gave his own opinion of value. The bankruptcy court also found that the Debtor's actions in his first bankruptcy case constituted an inappropriate manipulation of the bankruptcy system and supported its credibility determinations.

The bankruptcy court entered findings of fact and conclusions of law and a judgment denying discharge. The Debtor timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(J). We have jurisdiction under 28 U.S.C. § 158.

///

///

///

1. Whether Soler was required to file a written expert report pursuant to Civil Rule 26(a)(2)(B) and whether, in the absence of such a report, the bankruptcy court erred in permitting Soler's testimony.

2. Whether the bankruptcy court erred by "widening the scope" of trial so as to include a false oath made in the Debtor's first bankruptcy case.

## STANDARDS OF REVIEW

In a proceeding for denial of discharge, we review: (1) the bankruptcy court's determinations of the historical facts for clear error; (2) its selection of the applicable legal rules under § 727 de novo; and (3) its application of the facts to those rules requiring the exercise of judgments about values animating the rules de novo. Searles v. Riley (In re Searles), 317 B.R. 368, 373 (9th Cir. BAP 2004), aff'd, 212 F. App'x. 589 (9th Cir. 2006).

To reverse an evidentiary ruling, we must find that the bankruptcy court abused its discretion and that the error was prejudicial to the appellant. Van Zandt v. Mbunda (In re Mbunda), 484 B.R. 344, 351 (9th Cir. BAP 2012). A bankruptcy court abuses its discretion if it applies the wrong

---

[3] The Debtor delineates 20 issues on appeal, some of which are substantively identical, but posed in the converse. In his opening brief, however, the Debtor only specifically addresses the issues we identify above.

Given our ultimate determination, we do not address whether the bankruptcy court erred in determining that sufficient evidence existed supporting the $305,000 value.

6

legal standard, misapplies the correct legal standard, or if its factual findings are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

## DISCUSSION

Section 727(a)(4)(A) provides that the debtor's discharge may be denied where: (1) the debtor made a false oath in connection with the bankruptcy case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently. Retz v. Sampson (In re Retz), 606 F.3d 1189, 1197 (9th Cir. 2010) (citation and internal quotation marks omitted).

Objections to discharge are liberally construed in favor of the debtor and against the objector. Khalil v. Developers Sur. & Indem. Co. (In re Khalil), 379 B.R. 163, 172 (9th Cir. BAP 2007), aff'd, 578 F.3d 1167 (9th Cir. 2009). For that reason, the objector bears the burden to prove by a preponderance of the evidence that the debtor's discharge should be denied. Id.

On appeal, the Debtor argues that the bankruptcy court erred by permitting Soler to testify at trial when he did not file a written expert report and by expanding the scope of trial so as to include an alleged false oath that the Debtor made in his first bankruptcy case. He does not raise issues related to any of the elements expressly required for a denial of discharge under § 727(a)(4)(A), and, in particular, he does not even

7

implicitly discuss the second or third elements of a § 727(a)(4)(A) claim. Therefore, we do not address those elements here.

**A. On this record, we cannot tell how the bankruptcy court ruled on the issue of Soler's testimony.**

The Debtor argues that Civil Rule 37(c)(1) compelled the exclusion of Soler's testimony based on his failure to produce a written report in accordance with Civil Rule 26(a)(2)(B). This failure, the Debtor contends, was not harmless as the Trustee's case was based entirely on Soler's testimony. The Debtor alleges that without the report, he was unable to adequately prepare for cross-examination.

The Trustee disagrees that any report was required; he argues that Soler was retained to market and sell the Property, not to testify. He further asserts that Soler's duties in connection with his authorized employment did not regularly involve giving expert testimony. Rather, the Trustee argues, Soler's testimony was that of a percipient witness.

Civil Rule 26(a)(2)(B) requires "a written report - prepared and signed by the witness - if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." If a party fails to provide a written report, Civil Rule 37(c)(1) dictates that both testimony and information supplied by the expert witness are prohibited at trial. An exception exists if the failure was substantially justified or harmless. See id.

Here, the bankruptcy court did not expressly rule on the

8

Debtor's objections to Soler's testimony. It permitted Soler to testify on cross-examination, subject to a later determination. It subsequently deemed Soler's testimony credible and referred to Soler as a "qualified expert." It thus appears that it overruled the Debtor's evidentiary objections.

On this record, however, we cannot determine with any certainty how the bankruptcy court ruled. And that the bankruptcy court did not expressly address or resolve the Debtor's objection to Soler's testimony is a serious concern because we are unable to appropriately review the merits of the Debtor's argument absent adequate findings by the bankruptcy court on this subject.

The bankruptcy court apparently treated Soler as an expert witness. Its lone finding in this regard is not particularly helpful: "Trustee's qualified expert, Miguel Soler, testified that the true value of [the Debtor's] Property at the time that he filed the Second Bankruptcy was at least $305,000.00 and not $175,000.00 as claimed by [the Debtor] in his original bankruptcy schedules." Findings of Fact and Conclusions of Law Following the Trial (Adv. ECF No. 52) at 3 ¶ 13. In that circumstance, Soler's failure to provide a written report is problematic under Civil Rule 26(a)(2)(B), unless, of course, the bankruptcy court determined that the error was substantially justified or harmless pursuant to Civil Rule 37(c)(1). On this record, we cannot discern what the bankruptcy court determined. In particular, we do not know what value the bankruptcy court utilized when it determined that the Debtor "severely undervalued" the Property. Soler gave his opinion that the

9

value was at least $305,000, while the Debtor conceded some undervaluation when he revalued the Property at $245,000.

Civil Rule 52(a) requires that the bankruptcy court find the facts specifically and state its conclusions of law separately.[4] Without complete findings, we may vacate a judgment and remand the case to the bankruptcy court to make the requisite findings. First Yorkshire Holdings, Inc. v. Pacifica L 22, LLC (In re First Yorkshire Holdings, Inc.), 470 B.R. 864, 870 (9th Cir. BAP 2012).

We conclude that the bankruptcy court abused its discretion by failing to make sufficient findings regarding Soler's opinion testimony. Consequently, we VACATE the judgment and REMAND the matter to the bankruptcy court with instructions that it enter appropriate findings concerning the Debtor's objection to Soler's testimony, and that it consider the impact of those findings upon its conclusions and judgment.

**B.    The Debtor's prior acts in regards to the Property were admissible impeachment evidence.**

The Debtor also argues that the bankruptcy court erred by admitting into evidence his prior acts involving the Property. He questions whether this evidence constituted appropriate impeachment and argues that it was irrelevant and prejudicial as the events in the prior bankruptcy were too remote in time. He finally argues that there was no evidence that he made a false oath in the first bankruptcy case and that, in any event, it was

_____

[4] Civil Rule 52 is incorporated in adversary proceedings by Rule 7052.

10

a collateral matter where he was not provided with reasonable notice and a fair opportunity for rebuttal.

In response, the Trustee contends that he utilized evidence of actions in the Debtor's first bankruptcy case only to show that the Debtor had "gone to every conceivable length to protect his interest in the [] Property" – not to revoke his discharge in the first case.

The joint pretrial conference order in this case resolves this debate. The parties stipulated to the terms of this order, which identified the exhibits each intended to offer at trial. It also qualified the identification of documents with the statement that it was complete except for "exhibits to be used for **impeachment only.**" Joint Pretrial Conference Order (Adv. ECF No. 26) (emphasis added). There was no due process problem with introducing the evidence for purposes of impeaching the Debtor's generalized assertion of truthfulness.

Pursuant to Evidence Rule 608(b), the bankruptcy court may permit a witness to be cross-examined about specific instances of conduct in order to attack the witness's character for truthfulness. Determining whether the testimony is probative of truthfulness or untruthfulness is committed to the discretion of the bankruptcy court. In exercising its discretion, the bankruptcy court may take into consideration how remote in time the impeaching conduct occurred. See United States v. Jackson, 882 F.2d 1444, 1448 (9th Cir. 1989) ("[R]emoteness remains a relevant factor for the trial court to consider in assessing the probative value of the evidence" for impeachment under Evidence Rule 608(b)).

11

Here, the bankruptcy court permitted the Trustee to cross-examine the Debtor regarding the transfers of the Property and his failure to schedule the Property in his first bankruptcy case in order to raise questions as to the Debtor's character for truthfulness. In doing so, it implicitly determined that this evidence constituted appropriate impeachment and was more probative of the Debtor's truthfulness than prejudicial. It also implicitly concluded that the evidence was not too remote in time.

We agree. Evidence of the Debtor's prior acts in relation to the Property – namely, omitting the Property from his schedules in the first bankruptcy case despite his possession of a deed transferring the Property to him – was probative of his truthfulness. That the acts occurred years before the second bankruptcy case and the adversary proceeding did not mandate exclusion. See Jackson, 882 F.2d at 1448 (prosecution was permitted to question a witness attorney about his disbarment fourteen years earlier for misappropriation of client funds).

The bankruptcy court did not improperly expand the scope of the trial. Nor did it abuse its discretion in permitting the impeachment evidence.

## CONCLUSION

Based on the foregoing, we VACATE the judgment and REMAND to the bankruptcy court for entry of appropriate findings concerning the Debtor's objection to Soler's testimony.

12