*14-2104-cv(L)*

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2014

Nos. 14-2104-cv(L), 14-2105-cv(CON), 14-2106-cv(CON),

14-2107-cv(CON), 14-2108-cv(CON), 14-2109-cv(CON),

14-2111-cv(CON), 14-2112-cv(CON)

EDUARDO PURICELLI, RUBEN CHORNY, HICKORY SECURITIES LTD.,
RODOLFO VOGELBAUM, ELIZABETH ANDREA AZZA, CLAUDIA
FLORENCIA VALLS, SILVIA SEIJAS, HEATHER M. MUNTON, THOMAS L.
PICO ESTRADA, EMILIO ROMANO, RUBEN WEISZMAN, ANIBAL CAMPO,
MARIA COPATI, CESAR RAUL CASTRO,
*Plaintiffs-Appellees,*

*v.*

REPUBLIC OF ARGENTINA,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of New York.
Nos. 04-cv-2117, 04-cv-2118, 04-cv-1085, 04-cv-937, 04-cv-400,
04-cv-401, 04-cv-936, 04-cv-506 — Thomas P. Griesa, *Judge.*

ARGUED: JUNE 17, 2015
DECIDED: AUGUST 10, 2015

———————————

Before: LEVAL, STRAUB, and RAGGI, *Circuit Judges*.

———————————

Appeal from orders of the United States District Court for the Southern District of New York (Thomas P. Griesa, *Judge*), on remand from a previous appeal, certifying expanded plaintiff classes. We hold that the District Court contravened the mandate issued on appeal by failing to follow the prior panel's specific instructions. Accordingly, we **VACATE** and **REMAND**.

———————————

CARMINE D. BOCCUZZI (Jonathan I. Blackmun, Daniel J. Northrop, Jacob H. Johnston, *on the brief*), Cleary Gottlieb Steen & Hamilton LLP, New York, NY, *for* Republic of Argentina.

JENNIFER R. SCULLION, Proskauer Rose LLP, New York, NY (M. Todd Mobley, Proskauer Rose LLP, New York, NY; Michael Diaz, Jr., Carlos F. Gonzalez, Marta Colomar-Garcia, Diaz Reus & Targ LLP, Miami, FL; Saul Roffe, Law Offices of Saul Roffe, Esq., Marlboro, NJ, *on the brief*), *for* Eduardo Puricelli, Ruben Chorny, Hickory Securities Ltd., Rodolfo Vogelbaum, Elizabeth Andrea Azza, Claudia Florencia Valls, Silvia Seijas, Heather M. Munton, Thomas L. Pico Estrada, Emilio Romano, Ruben Weiszman,

Anibal Campo, Maria Copati, and Cesar Raul Castro.

_____

STRAUB, *Circuit Judge*:

After previous panels of this Court twice vacated aggregate judgments entered by the District Court in favor of plaintiff classes, we remanded with specific instructions. Rather than follow our instructions, the District Court certified expanded plaintiff classes. Because doing so was foreclosed by the mandate issued on the prior appeal, we **VACATE** and **REMAND**.

**BACKGROUND**

In 2001, the Republic of Argentina defaulted on roughly $80 to $100 billion of sovereign debt. *Seijas v. Republic of Argentina*, 606 F.3d 53, 55 (2d Cir. 2010) [hereinafter *Seijas I*]. Numerous actions by holders of Argentina's bonds were filed, including the eight (each pertaining to a different series of Argentina's bonds) appealed here.

In 2004, the plaintiffs-appellees ("Plaintiffs") filed for class certification in these eight actions, proposing that the classes be defined as all holders of Argentina's bonds in each of the eight respective bond series. Over the objection of Defendant-Appellant Argentina, the District Court granted Plaintiffs' motions for class certification, *see id*. at 55–56, but it rejected Plaintiffs' proposed class definition. Instead, the District Court certified eight class actions using Argentina's narrower proposed class, which included only those who *continuously* held bonds from the date of class filing through entry of judgment.

The continuous-holder requirement was a significant restriction on the scope of the classes because Argentina's bonds trade in a secondary market. *See id*. at 56; *see also NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 251 (2d Cir. 2012) (noting that some investors bought bonds, not when Argentina originally marketed them, but "on the secondary market at various times and

as recently as June 2010"), *cert. denied*, 134 S. Ct. 201 (2013). Hence, some investors who held bonds as of the date of class filing might later have sold their interests. And some investors who currently hold bonds could have acquired their interests after the date of class filing. So long as bond interests continue to be traded, the identity of investors holding bonds can shift, with each trade possibly reducing the number of investors who have held their interests continuously since the date of class filing.

After certifying the classes, the District Court granted summary judgment for Plaintiffs. *Seijas I*, 606 F.3d at 56. No significant questions existed concerning Argentina's liability, because Argentina conceded that it defaulted on the bonds and owed money to the bondholders. *Id.* at 56–57.

The District Court then entered aggregate judgments for the classes. *Id.* at 56. The District Court did not explain how it calculated the class-wide awards, and it acknowledged that its

estimates were likely inflated. *Id.* at 58. But it reasoned that granting inflated judgments was justifiable given Argentina's refusal to pay any judgment against it. *Id.*

Argentina appealed, contesting both the use of the class action device and the aggregate judgments. *See id.* at 57–58. In *Seijas I*, we affirmed the certification of classes but vacated the aggregate judgments. *Id.* at 57–59. We held that the continuous-holder class satisfied Rule 23's requirements, but we concluded that the District Court's inflated estimations of aggregate judgments were improper. *Id*. We explained that "[e]stimating gross damages for each of the classes as a whole, without using appropriate procedures to ensure that the damages awards roughly reflect the aggregate amount owed to class members, enlarges plaintiffs' rights by allowing them to encumber property to which they have no colorable claim." *Id*. at 58–59 (citing *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008) (holding that an aggregate determination that "bears little

or no relationship to the amount of economic harm actually caused" violates the Rules Enabling Act), *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008)).  We remanded for the District Court to "consider alternative approaches that will set damages awards that more closely reflect the losses class members experienced."  *Id*. at 59.

On remand, the District Court entered revised aggregate damage awards that deducted for bonds tendered in Argentina's two debt exchange offers,[1] but did not otherwise account for bonds purchased in the secondary market after the start of the class periods (i.e., bonds that had not been held continuously).  *Hickory Sec. Ltd. v. Republic of Argentina*, 493 F. App'x 156, 158–59 (2d Cir. 2012) [hereinafter *Seijas II*] (summary order).  Plaintiffs relied on an expert

---

[1] In 2005, and again in 2010, Argentina permitted bondholders to exchange their defaulted debt for new debt (at a substantial markdown in value).  *NML Capital*, 699 F.3d at 252–53.

to assert that the "overwhelming majority" of such bonds had likely been sued on in separate proceedings or tendered in one of Argentina's debt exchange offers and were thus already excluded from the proposed aggregate judgments. *Id.* at 158 (internal quotation marks omitted).

Argentina appealed, and in *Seijas II* we again vacated the aggregate judgments, concluding that they remained insufficiently tied to Argentina's liability to the classes. *Id.* at 159–60. Even though the classes comprised only those who had held their bond interests continuously since the classes' filing, the aggregate judgments contained no such limitation. *Id.* at 160. Because the District Court had still not adequately addressed "the volume of bonds purchased in the secondary market after 2004," we found "little difference" between the calculation of the aggregate judgments in *Seijas I* and *Seijas II*. *Id.* Nothing in the record indicated that the District Court had considered Plaintiffs' expert's

analysis, which, in any event, was unconvincing; the expert acknowledged that the bonds traded in a secondary market and that he could not determine the volume of such trading or the bondholders involved. *Id.*

We remanded with specific instructions for the District Court:

[O]n remand, the district court shall conduct an evidentiary hearing to resolve these issues. Specifically, it shall: (1) consider evidence with respect to the volume of bonds purchased in the secondary market after the start of the class periods that were not tendered in the debt exchange offers or are currently held by opt-out parties or litigants in other proceedings; (2) make findings as to a reasonably accurate, non-speculative estimate of that volume based on the evidence provided by the parties; (3) account for such volume in any subsequent damage calculation such that an aggregate damage award would "roughly reflect" the loss to each class, *see Seijas I*, 606 F.3d at 58–59; and (4) if no reasonably accurate, non-speculative estimate can be made, then determine how to proceed with awarding damages on an individual basis. Ultimately, if an aggregate approach cannot produce a reasonable approximation of the actual loss, the district court must adopt an individualized approach.

*Id.*; *see also id.* at 160 n.2 (explaining that "first entering aggregate judgments inconsistent with the foregoing and then moving forward with an individual claims process would not allay our concerns").

Following remand, the District Court expressed reluctance to holding the evidentiary hearing ordered in *Seijas II* but nevertheless stated that it would "try to obey the Court of Appeals and have that hearing." App'x 3749–50. Despite this intention, the District Court neither held the evidentiary hearing nor adopted an individualized approach for awarding damages. Plaintiffs had complained that the discovery necessary for the evidentiary hearing would be "inefficient" and "rife with legal and logistical pitfalls." Letter from Plaintiffs' Counsel to the District Court 1 (June 27, 2013), App'x 3733. Rather than pursue this discovery, Plaintiffs moved to modify the classes by "returning to the class definitions originally requested by the Plaintiffs—classes of all 'holders' of still outstanding bonds." *Id.* The District Court granted Plaintiffs' request to modify the

continuous-holder classes to all-holder classes, and it entered orders modifying the classes in the eight actions on appeal here.

Following the District Court's orders modifying the class definitions and granting class certification, we granted Argentina's petition for permission to appeal pursuant to Federal Rule of Civil Procedure 23(f).

**DISCUSSION**

Typically, a district court has discretion under Rule 23 to amend a class certification. Here, however, that discretion was cabined by the mandate in *Seijas II*. We review *de novo* whether the District Court has complied with our mandate, *see Carroll v. Blinken*, 42 F.3d 122, 126 (2d Cir. 1994), and we conclude that the District Court erred in reconsidering Plaintiffs' proposed all-holder class on remand. The mandate in *Seijas II* gave the District Court specific instructions that did not permit expanding the plaintiff classes.

A district court must follow the mandate issued by an appellate court. *Ginett v. Comput. Task Grp., Inc.*, 11 F.3d 359, 360–61

(2d Cir. 1993); *Soto-Lopez v. N.Y.C. Civil Serv. Comm'n*, 840 F.2d 162, 167 (2d Cir. 1988). The discretion that a district court has under Rule 23 to amend certification decisions "cannot be exercised in conflict with an appellate ruling," *In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70, 73 (2d Cir. 2007), because a "district court has no discretion in carrying out the mandate." *In re Ivan F. Boesky Sec. Litig.*, 957 F.2d 65, 69 (2d Cir. 1992); *accord Briggs v. Pa. R. Co.*, 334 U.S. 304, 306 (1948) ("[A]n inferior court has no power or authority to deviate from the mandate issued by an appellate court.").

Where a mandate limits the issues open for consideration on remand, a district court ordinarily cannot consider additional issues. *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 175 (2d Cir. 2014); *e.g., United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (stating that the mandate was "unambiguously limited in scope" where it directed the district court to "reconsider sentencing" and "its order of restitution" and thus did not permit resolution of issues

related to the underlying merits of the conviction (internal quotation marks omitted)). And where a mandate directs a district court to conduct specific proceedings and decide certain questions, generally the district court must conduct those proceedings and decide those questions. *See* 18B Charles Alan Wright, et al., *Federal Practice and Procedure* § 4478.3, at 753–54 (2d ed. 2002). We consider both the express terms and broader spirit of the mandate to ensure that its terms have been "scrupulously and fully carried out." *Ginett*, 11 F.3d at 361 (internal quotation marks omitted).

In *Seijas II*, after having twice been presented with the District Court's efforts to resolve the difficulty of identifying class members by issuing inflated aggregate judgments, we provided explicit instructions conclusively addressing the matter. We stated that the District Court "*shall* conduct an evidentiary hearing," and if an aggregate approach could still not work, the District Court "*must* adopt an individualized approach." *Seijas II*, 493 F. App'x at 160

(emphases added). The District Court, however, did not hold an evidentiary hearing, and when Plaintiffs explained that the discovery process required for the aggregate approach was unworkable, instead of following our order and adopting an individualized approach to damages, the District Court resurrected Plaintiffs' original class definition.

Our directive in *Seijas II* was clear. Even though it did not expressly preclude recertification, it cannot be read to have permitted the District Court to disregard our instructions and expand the plaintiff classes as a solution to a problem for which we had already prescribed a specific response. And whereas we may reconsider our prior rulings, we do so sparingly and only when presented with cogent and compelling reasons. *United States v. Quintieri*, 306 F.3d 1217, 1230 (2d Cir. 2002), *cert. denied sub nom. Donato v. United States*, 539 U.S. 902 (2003); *Soto-Lopez*, 840 F.2d at 168. We discern no such reasons on the record here. Hence, we

conclude that the District Court erred in not following *Seijas II*'s mandate.

**CONCLUSION**

For the foregoing reasons, the District Court's orders dated April 24, 2014, certifying all-holder classes in the eight actions at issue here, are **VACATED** and the cases are **REMANDED**. On remand, the District Court must follow our specific instructions in *Seijas II*, 493 F. App'x at 160.