In the

# United States Court of Appeals
## For the Second Circuit

August Term 2023

No. 22-969

CHRISTOPHER CALLAHAN, Individually and as Administrator D.B.N. of the
Estate of Kevin Callahan,

*Plaintiff-Appellant,*

PATRICIA CALLAHAN, Individually,

*Plaintiff,*

v.

THE COUNTY OF SUFFOLK, POLICE OFFICER THOMAS WILSON, #5675,
SERGEANT SCOTT GREENE, #960, DETECTIVE RIVERA, DETECTIVE
O'HARA, JOHN DOE, SUFFOLK COUNTY POLICE OFFICERS # 1-10,
RICHARD ROE, SUFFOLK COUNTY EMPLOYEES # 1-10,

*Defendants-Appellees,*

POLICE OFFICER ROBERT KIRWAN, #2815, POLICE OFFICER JAMES
BOWEN, #1294, DETECTIVE SERGEANT THOMAS M. GRONEMAN,
DETECTIVE LIEUTENANT GERARD PELKOFSKY,

*Defendants.*

Appeal from the United States District Court
for the Eastern District of New York
No. 12 Civ. 2973 (GRB), Gary R. Brown, District Judge, Presiding.

(Argued October 11, 2023; Decided March 19, 2024)

Before:     PARKER, LEE, and MERRIAM, *Circuit Judges.*

Plaintiff-Appellant Christopher Callahan appeals from a judgment of the United States District Court for the Eastern District of New York (Brown, *J.*) granting summary judgment to Defendants-Appellees Thomas Wilson and Suffolk County on Callahan's claims under 42 U.S.C. § 1983 for excessive force and *Monell v. Department of Social Services*, 436 U.S. 658 (1978) liability and denying Callahan leave to amend to his complaint.

On appeal, Callahan contends that the district court erred in considering and granting summary judgment because, following an earlier appeal in *Callahan v. Wilson*, 863 F.3d 144 (2d Cir. 2017), this Court remanded with instructions to hold a new trial. That trial was never held. Callahan also contends that, in any event, triable issues of material fact precluded summary judgment. We agree with Callahan on both grounds. However, we see no error in the denial by the district court on remand of his motion to amend the complaint. Accordingly, we **VACATE in part**, **AFFIRM in part**, and **REMAND** for a new trial.

ALEXANDER KLEIN (Donna Aldea, *on the brief*), Barket Epstein Kearon Aldea & LoTurco, LLP, Garden City, NY, *for Plaintiff-Appellant*

BRIAN C. MITCHELL, Assistant County Attorney *for* Christopher J. Clayton, Suffolk County Attorney, Hauppauge, NY, *for Defendants-Appellees*

BARRINGTON D. PARKER, *Circuit Judge*:

Plaintiff-Appellant Christopher Callahan appeals from a judgment of the

United States District Court for the Eastern District of New York (Brown, *J.*),

granting summary judgment to Defendants-Appellees Suffolk County Police

Officer Thomas Wilson and the County of Suffolk on claims under 42 U.S.C.

§ 1983 related to the death of his brother, Kevin Callahan. This case comes before

us after more than ten years of litigation in front of four different district court

judges, a jury trial, and a prior appeal to this Court. Suffice it to say that the

underlying events are sharply contested.

In September 2011, Wilson fired four shots, three of which hit and killed

Kevin Callahan. That is where the parties' agreement as to what happened

largely begins and ends. The parties sharply dispute what immediately

precipitated the shooting and the circumstances surrounding Wilson's use of

lethal force and, as a result, his entitlement to qualified immunity.

However, this appeal turns on a much simpler issue: whether, after a jury

verdict has been appealed and this Court has vacated the verdict and remanded

for a new trial, a district court is free to entertain and grant a motion for

summary judgment. We hold that, under these circumstances, the district court

violated the mandate rule. Accordingly, we **VACATE in part**, **AFFIRM in part**,

and, again, **REMAND** for a new trial.[1]

---

[1] The district court granted summary judgment on not only the 42 U.S.C. § 1983
claim against Wilson but also the *Monell v. Department of Social Services*, 436 U.S.

## BACKGROUND

On September 20, 2011, Patricia Callahan had a disconcerting call with Kevin Callahan, her 26-year-old son. Kevin had substance abuse issues, and when he had recently returned to her home in Selden, New York after being discharged from the hospital, she chose to leave and stay at a hotel to avoid further conflict with him. During the September 20th call, she heard someone yelling, and Kevin told her, "Mom, he's got a gun." Christopher Callahan was with his mother at the time, and, prompted by their concerns arising from the call, he contacted the Suffolk County Police Department.

Three Suffolk County Police officers, including Thomas Wilson, responded to a radio dispatch to follow up at Patricia Callahan's home. Wilson testified that he knocked loudly and announced the police presence before entering. Once inside, the officers split up, with Wilson and another officer heading downstairs.

Wilson testified that as he searched the downstairs area, he saw someone through the door jamb to a room, and after he had announced himself as an

---

658 (1978) claim against the County of Suffolk. *Callahan v. Cnty. of Suffolk*, 602 F. Supp. 3d 399, 412-13 (E.D.N.Y. 2022). Because we conclude that granting summary judgment violated our mandate to hold a new trial and otherwise was not warranted, all claims that were disposed of at summary judgment should proceed to trial.

officer, the person behind the door "start[ed] to square off towards the door."

App'x 131-32. Wilson testified that the door then closed on him, pinning him

between the door and the door frame with part of his left side, including his

hand carrying his semiautomatic pistol, exposed on the other side of the door.

Wilson also testified that he heard a "growling sound" and saw "a hand

thrusting towards [him] with an object." App'x 170. According to Wilson, he

feared that the person on the other side of the door had a weapon and that he

would be killed, so he fired his gun. Wilson testified that after he fired the first

shot, the door let up and he fell backwards, and as he fell, he continued firing.

Emergency Services and additional police officers arrived roughly 20 minutes

later; they found Kevin Callahan unresponsive. App'x 273, 294-95. No weapon

was found in the room where Kevin Callahan was located. App'x 294-95. An

autopsy report determined that Kevin Callahan died of three gunshot wounds.

In June 2012, plaintiffs[2] commenced this action in the Eastern District of

New York against Suffolk County, Wilson, and other Suffolk County Police

officers and county employees, alleging multiple state and federal law claims,

---

[2] We refer to plural "plaintiffs" because both Christopher and Patricia Callahan were plaintiffs, but Christopher Callahan is the sole plaintiff-appellant.

including claims under 42 U.S.C § 1983. *See* Complaint, *Callahan v. Cnty. of Suffolk*, No. 12-cv-02973 ("District Court Docket") (E.D.N.Y. June 14, 2012), ECF No. 1. In July 2015, plaintiffs proceeded to trial, including on the claim of excessive force against Wilson. The jury returned a verdict in favor of Wilson.

Plaintiffs appealed to this Court, principally arguing that a new trial was required because the jury had not been properly instructed on the excessive force claim against Wilson. *See Callahan v. Wilson*, 863 F.3d 144, 148-52, 154 (2d Cir. 2017). At trial, the jury had been instructed: "A police officer *may* use deadly force against a person *if* a police officer has probable cause to believe that the person poses a significant threat of death or serious physical injury to the officer or others." *Id.* at 150 (emphases added). This Court agreed with plaintiffs that the jury instruction was inconsistent with our decision in *Rasanen v. Doe*, 723 F.3d 325 (2d Cir. 2013), where we held that a "jury 'must' be instructed that the use of deadly force is '*unreasonable unless* the officer had probable cause to believe that the suspect posed a significant threat of death or serious physical injury to the officer or to others.'" *Id.* at 151 (quoting *Rasanen*, 723 F.3d at 334). As this Court noted, the jury instruction in *Rasanen* "was insufficient because it did not convey that an officer's use of deadly physical force is reasonable, and therefore legally

6

permissible, only in a specific circumstance." *Id.* We concluded that the jury

instruction in the Callahan trial posed the same problem. The "fatal defect" was

that the instruction allowed the jury to find in Wilson's favor "without

concluding that Officer Wilson had probable cause to believe that Callahan

posed a threat of death or serious injury." *Id.* at 152 (quoting *Rasanen*, 723 F.3d at

336 in the first instance).[3] Accordingly, we vacated the judgment and remanded

for a new trial. Our mandate ordered: "[T]he judgment of the district court is

VACATED and the case is REMANDED for a new trial." Judgment Mandate,

*Callahan v. Cnty. of Suffolk*, No. 16-336 (2d Cir. Aug. 2, 2017), ECF No. 114.

However, no new trial was ever held. In May 2018, the parties advised the

district court that the only remaining unresolved issues were the excessive force

claim against Wilson and the *Monell* claim against Suffolk County. *See* Status

Report, District Court Docket (May 10, 2018), ECF No. 84. In April 2021, the case

was reassigned to Judge Brown, and in September 2021, he placed the case on his

trial-ready calendar.

---

[3] This Court then concluded that this error was not harmless because it "allowed the jury to return a defense verdict if it found that Wilson acted according to an overly general standard of 'reasonableness' that does not comport with the holding of *Rasanen*—that deadly force in this context is reasonable only if the requisite probable cause standard is satisfied." *Id.* at 152.

7

However, the district court was also willing to entertain summary judgment motions. In December 2021, the defendants moved for summary judgment, arguing that Wilson's use of deadly force was protected by qualified immunity. Shortly thereafter, on January 26, 2022, plaintiffs moved to amend their complaint to add a state law claim for battery and to assert that Suffolk County was liable under the doctrine of *respondeat superior*. *See* Motion to Amend Complaint, District Court Docket (Jan. 26, 2022), ECF No. 93.

On April 29, 2022, the district court granted defendants' motion for summary judgment, finding that plaintiffs had failed to adequately challenge defendants' version of the events that led to Kevin Callahan's death and concluding that "there is no genuine dispute as to any material fact regarding the manner in which Wilson shot Callahan." *Callahan v. Cnty. of Suffolk*, 602 F. Supp. 3d 399, 410 (E.D.N.Y. 2022). Accepting Wilson's version of events, the district court held that "his use of lethal force is protected by qualified immunity." *Id.* at 412.[4] The district court also denied plaintiffs' motion to amend the complaint, concluding, among other reasons, that, in light of a lengthy delay in seeking to

---

[4] The district court also granted defendants' motion for summary judgment with respect to the *Monell* claim against Suffolk County, concluding that plaintiffs had waived the claim and, even if they had not, their evidence failed to establish Suffolk County's liability. *Id.* at 412-13.

amend, they had not established good cause under Federal Rule of Civil

Procedure 16(b).  *Id.* at 413-15.  This appeal followed.

## DISCUSSION

### I.       The Mandate Rule's Preclusion of Summary Judgment

"We review *de novo* whether the District Court has complied with our

mandate."  *Puricelli v. Argentina*, 797 F.3d 213, 218 (2d Cir. 2015).  In our review,

we "consider both the express terms and broader spirit of the mandate to ensure

that its terms have been 'scrupulously and fully carried out.'"  *Id.* (*quoting Ginett*

*v. Comput. Task Grp., Inc.*, 11 F.3d 359, 361 (2d Cir. 1993)).

On appeal, Christopher Callahan contends that the district court's

adjudication of the summary judgment motion violated the mandate's

instruction to conduct a new trial.  He also argues that, in any event, the district

court erred in granting summary judgment because of the existence of disputed

issues of material fact.  He is correct as to both issues.

The mandate rule is well-established.[5]  Under the mandate rule, "[w]here a

case has been decided by an appellate court and remanded, the court to which it

---

[5] "The 'mandate rule' has existed since the 'earliest days' of the judiciary."  *In re Coudert Bros. LLP* ("*Coudert Bros.*"), 809 F.3d 94, 98 (2d Cir. 2015) (quoting *Briggs v. Pa. R.R. Co.*, 334 U.S. 304, 306 (1948)).

is remanded must proceed in accordance with the mandate . . . as was established by the appellate court." *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004) (quotation marks and citations omitted).[6] In cases "where a mandate directs a district court to conduct specific proceedings and decide certain questions, generally the district court must conduct those proceedings and decide those questions." *Puricelli*, 797 F.3d at 218. In other words, the district court "must follow the mandate issued by an appellate court," and it "has no discretion in carrying out the mandate." *Id.* (quoting *In re Ivan F. Boesky Sec. Litig.*, 957 F.2d 65, 69 (2d Cir. 1992) in the second instance).[7]

---

[6] The mandate rule is a branch of the law of the case doctrine. *United States v. Aquart*, 92 F.4th 77, 87 (2d. Cir. 2024). The other branch of the law of the case doctrine is "implicated when a court reconsiders its own ruling in the absence of an intervening ruling of a higher court," and in such cases, "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case." *Prisco v. A & D Carting Corp.*, 168 F.3d 593, 607 (2d Cir. 1999) (quotation marks and citations omitted). This branch is not directly relevant to the case before us.

[7] Put slightly differently, "the lower court must carry out its duty to give the mandate 'full effect,'" and "cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded." *Coudert Bros.*, 809 F.3d at 98 (first quoting *Ginett*, 11 F.3d at 360-61; then quoting *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895)).

We recognize that there are cases where the language and scope of the mandate requires the district court to devote some additional analysis to determine what it may (and may not) consider on remand. In addition, we have made clear that "[w]hen the mandate leaves issues open, the lower court may dispose of the case on grounds not dealt with by the remanding appellate court." *Coudert Bros.*, 809 F.3d at 98.[8] But here, our mandate was quite clear: the district court must hold a new trial.

Further, we also recognize that there may be rare exceptions that justify a divergence from a mandate. *See, e.g.*, *Wakefield v. N. Telecom, Inc.*, 813 F.2d 535, 539-40 (2d Cir. 1987) (noting that, notwithstanding the remand for a new trial, "if further discovery proceedings on remand had revealed an undisputed fact conclusively precluding the entry of judgment in [the plaintiff's] favor," the district court could have granted summary judgment against him), *abrogated on other grounds by Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380

---

[8] For example, in *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.* ("*Sompo Japan*"), 762 F.3d 165, 172 (2d Cir. 2014), in the original appeal, this Court vacated the district court's grant of summary judgment to the plaintiffs and remanded "for further proceedings." The plaintiffs appealed following the remand, arguing that the district court violated the mandate rule by considering newly-raised defenses. *Id.* at 172-73, 175-76. We rejected this argument, concluding that nothing in our remand order restricted the district court from considering these defenses or from addressing issues not decided by this Court. *Id.* at 175-76.

(1993). However, circumstances in which a district court may diverge from an explicit mandate are very limited, and doing so is reserved for situations when developments occurring after a mandate issued would make the mandated conduct pointless or clearly irrational. *Cf. United States v. Bryson*, 229 F.3d 425, 426 (2d Cir. 2000) (per curiam).

Here, no exceptional changes to the applicable law or to the facts occurred that would warrant a departure from the mandate. Indeed, at argument, Callahan's counsel confirmed that there was no discovery or fact development between the issuance of this Court's mandate and the district court's grant of summary judgment. *See* Oral Argument Transcript 7:00-7:37. The record upon which the district court granted summary judgment was essentially the same as the record upon which we had ordered a new trial. Accordingly, there was no basis for the district court to disregard our mandate. *See Kerman*, 374 F.3d at 111-12.

We are certainly mindful of the fact that the docket of the court on which the district judge sits is unusually heavy and that when he inherited the case, it had been pending for a very long time. We are also fully aware of the lower court's understandable interest in resolving this case and moving on to others.

12

However, these commendable intentions do not trump a mandate from this Court. The rule of law and the stability, predictability, and fairness the mandate rule produces would be compromised if mandates were viewed as precatory rather than as obligatory. Here, the district court should have held a new trial because our mandate clearly instructed the district court to do so.

## II.    The Disputed Issues Precluding Summary Judgment

Moreover, even if the district court's entry of summary judgment did not violate the mandate, we would still vacate the order because the record contained disputed issues of material fact as to whether Wilson was entitled to qualified immunity. "We review orders granting summary judgment *de novo* and focus on whether the district court correctly concluded that there was no genuine dispute as to any material fact and that the moving party was entitled to judgment as a matter of law." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 241 (2d Cir. 2020) (quoting *Chunn v. Amtrak*, 916 F.3d 204, 207 (2d Cir. 2019)). In addition, we view the evidence in the light most favorable to the party against whom summary judgment was granted. *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 178 (2d Cir. 2008).[9]

---

[9] "Further, given the difficult problem posed by a suit for the use of deadly force, in which the witness most likely to contradict the police officer's story—the

The district court concluded that Wilson was entitled to qualified immunity based on its acceptance of Wilson's account of the shooting. While portions of plaintiffs' opposition arguably relied on speculation, the district court overlooked, or omitted from consideration, evidence that called Wilson's version into question.

For example, Wilson testified at trial—and noted in a police report made shortly after the shooting—that when he fired his first shot, the gun was at his hip/thigh area. However, the Suffolk County criminal analyst testified that he believed the first shot to hit Kevin Callahan was a contact shot that entered his right side just below the armpit and traveled across the chest. A jury could view that evidence as calling into question whether Wilson, in fact, fired from his hip. As a result, a jury could call into question Wilson's account of being trapped by someone pushing against the door. In addition, Wilson said he fired *one* shot into the room while he was pinned in the door and that, because the door let up

---

person shot dead—is unable to testify, the court may not simply accept what may be a self-serving account by the police officer. Rather, the court must also consider circumstantial evidence that, if believed, would tend to discredit the police officer's story, and consider whether this evidence could convince a rational factfinder that the officer acted unreasonably." *O'Bert ex rel. Est. of O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003) (citations, brackets, punctuation, and quotation marks omitted).

after the first shot, he continued shooting as he fell back. As such, a jury could believe that if the rest of the shots were fired as Wilson fell backwards, the bullets would be traveling in an upwards trajectory. But because there is evidence indicating that none of the bullets that hit Kevin Callahan was traveling in an upwards trajectory, a jury could rely on that evidence to doubt Wilson's account. Moreover, at summary judgment, Callahan submitted an expert report opining that two of the three shots that hit Kevin Callahan were fired from inside the room, rather than through the door. A jury could find that evidence inconsistent with Wilson's claim that he fell backwards after the first shot, reasoning that if Wilson's account were true, then only one shot should have been fired from inside the bedroom.

Further, the expert evidence revealed that there were significant open questions of fact. For example, while the defense's ballistic expert opined that the first shot Wilson fired was against "an individual leaning up against the door," he also testified that, "[w]e can't say exactly what he [Kevin Callahan] might have been doing before [he was shot]. . . . Exactly what would occur before that shot got fired cannot be said. There is no forensic crystal ball to guarantee how that happened." App'x 384-85. At summary judgment, plaintiffs

15

submitted a report from their expert opining that several factual questions could not be conclusively resolved based on the available evidence, including: "[t]he exact position of Officer Wilson's body throughout the incident," "[t]he exact position of Mr. Callahan's body throughout the incident," "Mr. Callahan's actions prior to and during the shooting incident," and "[t]he position of the bedroom door throughout the incident." App'x 609. In view of the conflicting testimony and unresolved questions of fact in the record, summary judgment was not warranted.

### III. The Denial of the Motion for Leave to Amend the Complaint

Plaintiff-Appellant also appeals the district court's denial of his motion to amend his complaint. On January 26, 2022, nearly ten years after the start of this litigation, plaintiffs moved to amend their complaint to add a state law battery claim, asserting that Suffolk County was vicariously liable for Wilson's actions. They sought to do so in light of this Court's January 21, 2022 decision, *Triolo v. Nassau County*, 24 F.4th 98, 110-13 (2d Cir. 2022), which held that municipalities could be vicariously liable under New York state law for an employee's wrongful conduct, even when the employee was entitled to individual qualified immunity. Plaintiffs' justification for the delay was that a claim against Suffolk

County under a *respondeat superior* theory would have been superfluous prior to

*Triolo* because "Suffolk County was already required to indemnify Officer

Wilson, leaving no financial benefit to a direct municipal claim."  Appellant's

Brief 37.  However, the district court denied the motion, concluding that

plaintiffs did not act with sufficient diligence to satisfy Rule 16(b)(4) because they

"could have included a *respondeat superior* claim against the County along with

their state law tort claims at the time the complaint was filed."  *Callahan*, 602 F.

Supp. 3d at 414.[10]

Although a plaintiff may amend a complaint after a scheduling order

deadline, under Rule 16(b)(4), the plaintiff may do so only upon a showing of

good cause.  *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021), *cert. denied*,

142 S. Ct. 1112 (2022).  "Whether good cause exists turns on the 'diligence of the

moving party.'"  *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (quoting

*Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003)).  Denials of leave to

amend are typically reviewed for abuse of discretion.  *Id.* at 334.  However,

---

[10] The district court also noted that even if plaintiffs had established good cause, it "would still deny the motion to amend the complaint because of the undue prejudice of prolonging this litigation for defendants[.]"  *Callahan*, 602 F. Supp. 3d at 414.  Because we affirm the district court's primary basis for denying leave to amend, we decline to address its alternative justification.

plaintiffs argue that the denial here should be reviewed *de novo* because it was based on a legal interpretation, namely the interpretation of *Triolo*. *See* Appellant's Brief 33 (*citing Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 592 (2d Cir. 2007)). We do not need to resolve which is the appropriate standard of review, because under either, we would affirm the district court's denial of leave to amend.

Plaintiffs argue that they acted diligently and, thus, satisfied Rule 16(b)'s good cause standard. They contend that the proposed amendments were a result of a change of law effected by *Triolo*, 24 F.4th at 110-13, and that they expeditiously moved to amend their complaint after *Triolo* was published. As the district court noted, a change in controlling law may provide good cause to amend. *Callahan*, 602 F. Supp. 3d at 413.

However, here, there was no change in controlling law that impacted plaintiffs' ability to raise their proposed claim at the start of this litigation. Although *Triolo* settled a previously open question regarding municipal liability, plaintiffs could have asserted their proposed *respondeat superior* claim against Suffolk County at the time of filing, regardless of *Triolo*. Apparently, plaintiffs chose not to include the proposed *respondeat superior* claim earlier because they

believed that the claim offered no potential financial benefit to them, given that Suffolk County would indemnify the officers, and the claim would have been dismissed if the officers were entitled to qualified immunity. However, nothing as a matter of law barred plaintiffs from including the claim. Because plaintiffs sought long after this litigation commenced to amend their complaint to add a claim that was available at the beginning of it, we agree with the district court that they did not move with the diligence needed to satisfy the good cause standard of Rule 16(b). Accordingly, we affirm the district court's denial of leave to amend.

## CONCLUSION

For the reasons set forth above, the judgment of the district court is **VACATED in part, AFFIRMED in part**, and **REMANDED** once again for a new trial.