23-1109-bk (L)
*Aquino v. Alexander Capital LP*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of June, two thousand twenty-four.

Present:
> RICHARD C. WESLEY,
> WILLIAM J. NARDINI,
> BETH ROBINSON,
> *Circuit Judges*.

---

JOHN J. AQUINO, CHAPTER 7 TRUSTEE BY ITS ASSIGNEE CONVERGENT DISTRIBUTORS OF TEXAS, LLC,

> *Plaintiff-Appellant-Cross-Appellee*,

v.

ALEXANDER CAPITAL LP, NESA MANAGEMENT LLC, JOSEPH AMATO, ROCCO GUIDICIPIETRO,

> *Defendants-Counter-Claimants-Appellees-Cross-Appellants*.*

23-1109 (L); 23-1164 (XAP)

---

| | |
|---|---|
| For Plaintiff-Appellant-Cross-Appellee: | WILLIAM C. RAND, Law Office of William C. Rand, New York, NY |
| For Defendants-Counter-Claimants-Appellees-Cross-Appellants: | HOLLY COLE (Bryan M. Ward, *on the brief*), Holcomb + Ward, LLP, Atlanta, GA |

---

* The Clerk of Court is respectfully directed to amend the caption as set forth above.

Appeal from a judgment of the United States District Court for the Southern District of New York (Jed S. Rakoff, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**. Defendants' conditional cross-appeal is **DISMISSED** as moot.

Plaintiff-Appellant Convergent Distributors of Texas, LLC ("Convergent") appeals from a judgment of the United States District Court for the Southern District of New York (Jed S. Rakoff, *District Judge*), entered on July 7, 2023, directing a verdict pursuant to Federal Rule of Civil Procedure 52(c) in favor of Defendants-Appellees Alexander Capital, LP ("ACLP") and its partners, Joseph Amato, Rocco Guidicipietro, and NESA Management, LLC (together with ACLP, the "Defendants"). Convergent also appeals from an interlocutory order entered on March 31, 2023, striking its request for a jury trial, and an interlocutory order entered on July 8, 2022, granting partial summary judgment in Defendants' favor.

A Chapter 7 trustee assigned the claims at issue in this appeal to Convergent after Inpellis, Inc., a developmental stage pharmaceutical company, was forced into bankruptcy following a failed initial public offering ("IPO") of its stock. Convergent has alleged various fraudulent inducement, breach of contract, and fraud claims against ACLP, an investment bank that served as Inpellis's managing underwriter and exclusive financial advisor, and its three partners, in connection with their work on Inpellis's failed IPO. Specifically, Convergent contends that Defendants misrepresented or concealed their inability to conduct a firm commitment offering to Inpellis. On July 8, 2022, the district court denied in part and granted in part the parties' motions for summary judgment, finding several undisputed facts and limiting the range of issues to proceed to trial. The district court later granted Defendants' motion to strike Convergent's jury demand in

2

light of a waiver provision included in a settlement agreement between Inpellis and ACLP. Following a bench trial, the district court determined that Convergent failed to introduce sufficient evidence to support its claims and that judgment in favor of Defendants was warranted as to all of Convergent's remaining claims. This appeal followed. We assume the parties' familiarity with the case.

"We review orders granting summary judgment *de novo* and focus on whether the district court correctly concluded that there was no genuine dispute as to any material fact and that the moving party was entitled to judgment as a matter of law." *Callahan v. Cnty. of Suffolk*, 96 F.4th 362, 368 (2d Cir. 2024).[1] "On appeal from a bench trial, conclusions of law—as well as mixed questions of law and fact—are reviewed *de novo*, while findings of fact are reviewed for clear error." *Atl. Specialty Ins. Co. v. Coastal Env't Grp. Inc.*, 945 F.3d 53, 63 (2d Cir. 2019). "[A] finding is clearly erroneous only if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* In particular, "special deference is paid to findings of fact where the trial court bases its determinations on assessments of witnesses' credibility." *Repp v. Webber*, 132 F.3d 882, 891 (2d Cir. 1997).

## I. Jury Trial Demand

Convergent first argues that the district court erred by striking its jury demand. While the right to a jury trial is fundamental, "a contractual waiver is enforceable if it is made knowingly, intentionally, and voluntarily." *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 188

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, alteration marks, footnotes, and citations.

(2d Cir. 2007). Here, considering the plain intent of the settlement agreement, we conclude that the district court properly interpreted and enforced the jury waiver provision.

The district court correctly understood the agreement as seeking a global resolution of the parties' difficulties, and properly rejected Convergent's argument that the agreement merely resolved a single dispute over legal fees. Notably, the agreement indicates the parties' intent to "settle and resolve *all claims and disputes* among them." App'x at 471 (emphasis added).

Nor does the agreement's jury waiver contain language limiting the scope of claims that are covered by it; the waiver applies to any dispute that might arise between ACLP and Inpellis. The provision states that, "[i]n any action, suit or proceeding in any jurisdiction brought by any party against any other party, the parties each knowingly and intentionally, to the greatest extent permitted by applicable law, hereby absolutely, unconditionally, irrevocably and expressly waive[] forever trial by jury." *Id.* at 474 (capitalization removed). Moreover, we agree with the district court that the settlement agreement's mutual general release does not limit the scope of the jury waiver if a party fails to perform under the agreement, because that is exactly the set of circumstances in which one would enter litigation and have the waiver apply. If the jury waiver applied only when the parties perform under the agreement, then the waiver would become largely meaningless. Accordingly, the district court properly granted Defendants' motion to strike Convergent's jury demand.

## II. Fraud-Related Claims

Convergent further argues that the district court erred in finding that there was insufficient proof of Defendants' fraudulent intent and Inpellis's justifiable reliance. "[A] plaintiff alleging fraud must show by clear and convincing evidence that the defendant knowingly or recklessly

4

misrepresented a material fact, intending to induce the plaintiff's reliance, and that the plaintiff relied on the misrepresentation and suffered damages as a result." *Merrill Lynch*, 500 F.3d at 181.

At the summary judgment stage, the district court determined that there was no genuine dispute that the engagement agreement of July 2014 ("First Engagement Agreement") between Inpellis and ACLP contained material factual misrepresentations because ACLP failed to disclose its inability to conduct the Inpellis IPO on a firm commitment basis. Nevertheless, the district court determined that the record did not support an indisputable finding adequate to support summary judgment that ACLP made the false representations with the intent to defraud. At trial, the district court determined that Convergent failed to prove fraudulent inducement regarding the First Engagement Agreement because the evidence presented did not sufficiently prove that Defendants acted with fraudulent intent.

Here, Convergent asserts that the district court failed to consider evidence of Defendants' knowing and reckless misrepresentation of material facts. In particular, Convergent contends that the district court misinterpreted deposition testimony from Amato and Guidicipietro that purportedly supported its theory that Defendants knew ACLP was prohibited from conducting a firm commitment underwriting due to their membership agreement with the Financial Industry Regulatory Authority ("FINRA"). But the district court did consider the deposition testimony of Amato and Guidicipietro and, as the primary factfinder, determined that both individuals credibly testified that ACLP did not become aware of its inability to conduct a firm commitment offering until it received a letter from FINRA in May 2015. As a result, the district court did not clearly err in finding that, at the time Inpellis signed the First Engagement Letter, ACLP believed that it had authority to conduct a firm commitment underwriting.

Convergent presents no clear and convincing evidence that, prior to receipt of the FINRA letter, ACLP consciously or recklessly disregarded evidence that it lacked authority to be a firm commitment underwriter. Rather, the record indicates that not only was the Inpellis IPO going to be ACLP's first IPO as an underwriter, but also that ACLP voluntarily disclosed to FINRA its intent to conduct the IPO on a firm commitment basis before learning of its lack of approval.

Convergent also argues that at summary judgment and at trial, the district court erred in not recognizing that Defendants' violation of their affirmative duty to disclose ACLP's licensing and regulatory issues was proof of fraudulent intent and justifiable reliance. "New York recognizes a duty by a party to a business transaction to speak in three situations: first, where the party has made a partial or ambiguous statement, on the theory that once a party has undertaken to mention a relevant fact to the other party it cannot give only half of the truth; second, when the parties stand in a fiduciary or confidential relationship with each other; and third, where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Convergent argues that the district court failed to recognize ACLP's duty to disclose under the "superior knowledge" doctrine and that, as a licensed entity, Defendants had sole access to information regarding its regulatory issues. In addition, Convergent asserts that Defendants' last-minute disclosure and characterization of the FINRA letter as a "minor" issue was a partial half-truth that imposed a duty on Defendants to make a full disclosure of material facts. Convergent specifically contends that Defendants' concealment resulted in Inpellis undertaking substantial financial obligations, including a multi-million dollar bridge loan.

We are unpersuaded. Although the evidence suggests that when Inpellis took on the bridge loan, ACLP knew, but had not yet disclosed, that it lacked firm commitment authority, proof of

6

fraud in New York requires "that the plaintiff relied on the misrepresentation." *Merrill Lynch*, 500 F.3d at 181. Here, the district court did not err in determining that Inpellis did not take on the bridge loan in reliance on ACLP having firm commitment authority. Rather, Inpellis's CEO testified that the decision to seek bridge funding was not contingent on a firm commitment offering but simply necessary for Inpellis to advance its technology ahead of an IPO.

Insofar as Convergent argues that for other purposes Inpellis relied on ACLP having firm commitment authority even *after* Inpellis had actual knowledge that ACLP lacked such authority, this argument also fails. "[F]or purposes of showing fraud, a party cannot demonstrate justifiable reliance on representations it knew were false." *Id.* at 182. The district court reasonably found that, following ACLP's receipt of the FINRA letter, Inpellis became aware, in August or September 2015, that ACLP did not have regulatory authority to underwrite the IPO as a firm commitment. Thus, Inpellis had actual knowledge of Defendants' inability to conduct a firm commitment underwriting before it entered the amended engagement letter of October 2015 ("Second Engagement Letter"), which reaffirmed ACLP as the managing underwriter, and before it finalized its public filings. Accordingly, the district court did not err in concluding that Inpellis did not justifiably rely on the engagement letters as a guarantee that ACLP would conduct a firm commitment underwriting.

### III.    Breach of Contract Claim

Turning to the breach of contract claim, Convergent argues that the district court erred in finding at trial that, while the engagement letters established ACLP as Inpellis's financial advisor and managing underwriter, there was no evidence supporting its claim that ACLP breached its duties of good faith and honest dealing. "Under New York law, implicit in every contract is a covenant of good faith and fair dealing[,] which encompasses any promises that a reasonable

7

promisee would understand to be included. Neither party to a contract shall do anything that has the effect of destroying or injuring the right of the other party to receive the fruits of the contract, or to violate the party's presumed intentions or reasonable expectations." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 205 (2d Cir. 2018). Convergent asserts that this claim is based on (1) ACLP's failure to disclose material facts to Inpellis about its capacity to conduct a firm commitment offering, which impacted Inpellis's decision to secure a bridge loan and (2) ACLP's breach of good faith by working together with Inpellis's CEO to conduct the IPO in a manner that was against Inpellis's best interest.

Convergent has not shown that the district court clearly erred in finding that Convergent did not present sufficient evidence at trial to support its breach of contract claim. In particular the district court did not clearly err in concluding that Inpellis was independently pursuing a bridge loan and that obtaining the financing was critical because Inpellis did not have sufficient operating capital to continue its business operations. As we previously noted, there is no evidence that Inpellis took on the bridge loan in reliance on ACLP having firm commitment authority, and despite Convergent's allegations of bad faith, Inpellis made the decision to re-affirm ACLP as its underwriter in the Second Engagement Letter and to proceed with its public filings with full knowledge of ACLP's unresolved regulatory issues. Because the evidence reflects that Inpellis would have taken the same actions even if ACLP had earlier disclosed its firm commitment issue, Convergent fails to show that it incurred damages from ACLP's alleged breach. *See RXR WWP Owner LLC v. WWP Sponsor, LLC*, 132 A.D.3d 467, 468 (1st Dep't 2015) ("The court correctly dismissed the breach of the implied covenant of good faith and fair dealing cause of action, because of the lack of actual damages.").

In addition, substantial evidence supports the district court's rejection of Convergent's assertion that Inpellis's CEO, Patrick Mooney, was working in concert with ACLP to conduct the IPO in a manner that harmed Inpellis's interests. Accordingly, Convergent has not established its breach of contract claim.

## IV. Proximate Causation

Lastly, even if Convergent could establish the other elements of liability for fraud or breach of contract, in order to recover damages from the failed IPO, as opposed to damages suffered prior to the IPO's failure, Convergent would also have to prove that the failed IPO was proximately caused by Defendants' alleged misconduct. *See, e.g., Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52–53 (2d Cir. 2011). Convergent asserts that the district court erred in granting partial summary judgment in Defendants' favor on the issue of proximate cause primarily because it failed to consider evidence that Defendants were directly involved in the decision to make material omissions in an S-1 filing that triggered an SEC investigation and stopped the IPO, which led to Inpellis's bankruptcy. In particular, Convergent argues that the district court failed to consider the relevant evidence because of a purportedly mistaken response to Defendants' Rule 56.1 statement. For the reasons articulated by the district court, we disagree.

First, the record does not support any contention that the focus of the SEC's order was the switch from a firm commitment to best efforts underwriting; rather, it is undisputed that the SEC issued a stop order halting the IPO because of what it regarded as inadequate risk disclosures surrounding the extent of control and influence of Inpellis's parent company. We therefore agree with the district court's finding that ACLP's alleged fraud and breach of contract did not proximately cause damage to Inpellis resulting from the failed IPO.

9

Second, Convergent's admission that "[t]he decision to include or omit the disclosures that were the focus of the SEC's investigation was made by Inpellis in reliance on its counsel," is directly supported by the record and was properly relied upon by the district court. Specifically, Mooney testified that, prior to making a decision, there was a back and forth amongst advisors and generally a collective discussion regarding the risk disclosures. Accordingly, we agree with the district court's determination that ACLP did not proximately cause Convergent's alleged damages.

\*       \*       \*

We have considered all of Convergent's remaining arguments and find them unpersuasive. For the reasons stated above, we **AFFIRM** the judgment of the district court. We **DISMISS** Defendants' conditional cross-appeal as moot.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

10