*Browe et al. v. CTC Corp. & Glenn Laumeister*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of February, two thousand twenty-five.

Present:
> DEBRA ANN LIVINGSTON,
> > *Chief Judge*,
> MYRNA PÉREZ,
> ALISON J. NATHAN,
> > *Circuit Judges*.

---

DONNA BROWE, TYLER BURGESS, BONNIE JAMIESON, PHILIP JORDAN, ESTATE OF BEVERLY BURGESS,

> *Plaintiffs-Appellants-Cross Appellees*,

LUCILLE LAUNDERVILLE,

> *Plaintiff-Counter-Defendant-Appellant-Cross-Appellee,*

> > v.

GLENN LAUMEISTER,[*] CTC Corporation

> *Defendants-Counter-Claimants-Appellees Cross-Appellants*.

23-1215 (L)
23-1250 (XAP)

---

[*] The Clerk of Court is directed to amend the caption as noted.

1

For Plaintiffs-Appellants-Cross-Appellees and Plaintiff-Counter-Defendant-Appellant-Cross-Appellee:

JOHN D. STASNY, Woolmington, Campbell, Bent & Stasny, P.C., Manchester Center, VT.

For Defendants-Counter-Claimants-Appellees-Cross-Appellants:

NICOLE M. BODOH, Devine, Millimet & Branch, Professional Association, Manchester, NH (Alexandra E. Edelman, Primmer Piper Eggleston & Cramer PC, Burlington, VT, *on the brief*).

Appeal from a judgment of the United States District Court for the District of Vermont (Reiss, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED in PART and VACATED in PART**.

The parties appeal from a judgment entered on August 18, 2023, after a bench trial determining damages owed for breach of fiduciary duty, the allocation of fault among breaching co-fiduciaries, and how to allocate the assets of the ERISA retirement plan upon termination of the plan. We have already discussed much of the subject matter of this dispute in *Browe v. CTC Corp.*, 15 F.4th 175 (2d Cir. 2021) [hereinafter *Browe I*], and set forth the underlying facts, the procedural history of the case, and the issues on appeal here only insofar as necessary to explain our decision to affirm in part and vacate in part.

Bruce Laumeister ("Laumeister") created a deferred compensation plan (the "Plan") in 1989 or 1990 for certain employees of his company, CTC Corporation ("CTC", with Laumeister "Defendants"). *Id.* at 185. Lucille Launderville ("Launderville"), a director and President of CTC, became an administrator of the Plan some time thereafter. *Id.* at 185, 188. Starting in 2004, Laumeister, with the assistance of Launderville and Donna Browe ("Browe"), began withdrawing funds from the Plan in order to pay CTC's operating expenses. *Id.* at 188. By 2008, Browe and

Launderville "knew that CTC's cash flow was insufficient to pay its general creditors or to fund its deferred compensation accounts." Spec. App'x 17 (internal quotation marks and citation omitted). Instead of informing Plan participants of the shortfall, they entered into a side-deal with Laumeister in which he promised to *personally* fund their Plan benefits. *Id.* They remained silent until 2015, when they, along with Tyler Burgess, Bonnie Jamieson, Philip Jordan, and the Estate of Beverly Burgess (collectively, "Plaintiffs"), brought suit for, *inter alia*, breach of fiduciary duty and wrongful denial of benefits. *Browe I*, 15 F.4th at 188. Defendants asserted a counterclaim against Launderville for contribution and indemnification for her role as a breaching co-fiduciary. *Id.* at 183, 189.

After a bench trial, the district court entered judgment for the Plaintiffs on the breach of fiduciary duty claims and for Defendants on the wrongful denial of benefits and contribution and indemnification claims. *Id.* at 189. As to the breach of fiduciary duty claims, the district court ordered Laumeister to restore the Plan (the "Restoration Award") to its estimated 2004 asset levels (the "2004 Base Amount"), the date at which it determined the Plan had been terminated, and for Launderville to contribute forty percent of the award. *Id*. at 189, 197. With regards to the wrongful denial of benefits claim, the district court held that the Plaintiffs had not proven they were eligible for benefits. *Id.* at 202-03. However, as a remedy for the fiduciary breaches, the district court ordered disbursement of the Plan assets. *Id*. at 189-90, 197, 206. Both parties appealed. *Id*. at 190.

We affirmed in part and reversed in part the judgment of the district court. *Id.* at 208. As to the breach of fiduciary duty claims, our remand in *Browe I* directed the district court "to recalculate [the Restoration Award] in order to capture losses through the date of judgment," *id.* at 199, and to "assess CTC's liability, if any[.]" *id.* at 200. We provided the district court the

3

opportunity to "revisit" its allocation of fault between Launderville and Laumeister. *Id.* at 201. We vacated the judgment with respect to the wrongful denial of benefits claims but "express[ed] no view" as to its ultimate success. *Id.* at 205. Finally, we remanded for the district court to craft a remedial scheme for distribution of the Restoration Award that complied with ERISA's vesting provisions. *Id.* at 206-07.

On remand, the district court recalculated the Restoration Award, Spec. App'x 3-5, and found Launderville and Laumeister to be equally culpable for the breaches, *id.* at 24. The district court also found that Browe and Launderville's claims for wrongful denial of benefits were time-barred because of their knowledge as of 2008 that the Plan could not pay their benefits, *id.* at 17-18, but allowed them to receive benefits as part of the court-ordered termination of the Plan, *id.* at 18-19. Once again, both parties appealed.[1]

## I.     Calculation of the Restoration Award

Plaintiffs contend that the district court erred by refusing to deviate from the 2004 Base Amount when calculating the Restoration Award while at the same time allowing the Defendants to present evidence of disbursement of benefits to Plan participants (so-called withdrawals) which diminished the Restoration Award. We disagree. We review a district court's compliance with our mandate *de novo*. *Callahan v. Cnty. of Suffolk*, 96 F.4th 362, 367 (2d Cir. 2024). "[W]here a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate as was established by the appellate court." *Id.* (quoting *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004)) (alterations adopted). As such, the district court may not reconsider "its prior decisions that have been ruled on by the court of

---

[1] Bruce Laumeister died on May 26, 2023. His lawyers filed a motion in this court, unopposed by Plaintiffs, to substitute Glenn Laumeister, Executor of the Estate of Bruce Laumeister, in Bruce Laumeister's place. We grant this motion to substitute. Fed. R. App. P. 43(a).

4

appeals," *United States v. Stanley*, 54 F.3d 103, 107 (2d Cir. 1995) (internal quotation marks and citation omitted), including issues "impliedly decided" by the court of appeals, *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (internal quotation marks and citation omitted).

We remanded the calculation of the Restoration Award to "capture losses through the date of judgment." *Browe I*, 15 F.4th at 199. As the district court recognized, it was thus limited to using the 2004 Base Amount as the starting point from which to calculate Plan growth from 2004 until the date of judgment. And the district court's consideration of withdrawals on remand complied with our mandate because it was a logical extension of the method used to calculate the 2004 Base Amount, a method unchallenged in the original appeal. *See Browe et al v. CTC Corp. et al*, 15-cv-00267 (D. Vt.) Docket No. 313, at 148-49 (explaining that the withdrawals prior to 2004 had been considered when reaching the 2004 Base Amount). This approach gave full effect to the "spirit of the mandate." *In re Coudert Brothers LLP*, 809 F.3d 94, 99 (2d Cir. 2015) (internal quotation marks and citation omitted). Accordingly, we affirm the district court's calculation of the Restoration Award.

## II.     Apportionment of Fault

Next, Plaintiffs contend that the district court erred by reweighing its original findings as to allocation of fault. "The district court, however, retains discretion under the mandate rule to reconsider, on remand, issues that were not expressly or implicitly decided by this Court." *Stanley*, 54 F.3d at 107 (internal quotation marks and citation omitted). Indeed, our mandate explicitly provided the district court with the option to "revisit the allocation issue" on remand. *Browe I*, 15 F.4th at 201. That is what the district court did. Launderville and Laumeister both breached their fiduciary duties in multiple ways. On remand, the district court elaborated on some of those

breaches and reconsidered the weight to give the different breaches in apportioning fault. This was within the remit of our mandate.

Plaintiffs also contend that the district court erred by failing to make a determination as to CTC's liability for contribution. "[W]here a mandate directs a district court to conduct specific proceedings and decide certain questions, generally the district court must conduct those proceedings and decide those questions." *Callahan*, 96 F.4th at 367 (internal quotation marks and citation omitted). Our mandate directed the district court to "assess CTC's liability, if any[.]" *Browe I*, 15 F.4th at 200. The district court did not do so. This was error. We therefore vacate the district court's judgment with respect to contribution.

Although the failure to allocate liability to CTC requires us to vacate the judgment with regard to contribution, we offer some guidance to assist the district court's analysis on remand. *See Carlson v. Principal Fin. Grp.*, 320 F.3d 301, 307 (2d Cir. 2003). The Restatement of Trusts explains that courts should consider a non-exhaustive list of four factors to determine the proportionate degrees of fault in determining contribution among breaching co-fiduciaries:

> (1) whether he fraudulently induced the other to join in the breach of trust; (2) whether he intentionally committed a breach of trust and the other was at most guilty of negligence; (3) whether because of his greater experience he controlled the conduct of the other . . . ; (4) whether he alone committed the breach of trust and the other is liable only because of an improper delegation, or failure to exercise reasonable care to prevent him from committing a breach of trust, or neglect to take proper steps to compel him to redress the breach of trust.

RESTATEMENT (SECOND) OF TRUSTS § 258 cmt. d (AM. L. INST. 1959); RESTATEMENT (THIRD) OF TRUSTS § 102 cmt. b(3) (AM. L. INST. 2012). The Restatement also explains that "[a] trustee who benefited personally from the breach is not entitled to contribution to the extent of that benefit." RESTATEMENT (THIRD) OF TRUSTS § 102(3).

The apportionment of liability between breaching co-fiduciaries is within the broad discretion of the district court. *Cf. Katzenberg v. Lazzari*, 406 F. App'x 559, 561-62 (2d Cir. 2011); *see also Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 101-02 (3d Cir. 2012). To be sure, the Restatement provides the correct starting point for the district court's analysis. But it was within the discretion of the district court to consider additional factors, such as the timing of Launderville's notification of other Plan participants and the fiduciaries' motivations for diverting Plan assets; to weigh the different breaches in which each fiduciary was engaged, such as Launderville's self-dealing and her denial of Plan participant benefits; and to rely on relative fault to allocate liability where both Launderville and Laumeister received Plan assets through their breaches. *Cf. Gillespie v. Seymour*, 250 Kan. 123, 147-48 (1991) (refusing indemnification and apportioning liability based solely on fault where both trustees received benefits from the breach). On remand, the district court may once again revisit the allocation of liability between Launderville and Laumeister in assessing the liability, if any, of CTC, but its reasoning in the Supplemental Findings of Fact and Conclusions of Law as to the two was not an abuse of discretion.

### III. Standing

Plaintiffs contest Defendants' statutory and constitutional standing to bring their cross-appeal. We review the existence of constitutional and statutory standing *de novo*. *See Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 91 (2d Cir. 2019) (constitutional standing); *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty.*, 710 F.3d 57, 65 (2d Cir. 2013) (statutory standing).

A party has constitutional standing to appeal if that party is "aggrieved by the judicial action from which it appeals." *Great Am. Audio Corp. v. Metacom, Inc.*, 938 F.2d 16, 19 (2d Cir. 1991). Defendants have personally been ordered to pay Browe and Launderville $283,975. Spec.

App'x 27-28, 40-41. They are "unquestionably" aggrieved by this order. *In re Cleveland Imaging & Surgical Hosp.*, 26 F.4th 285, 295 (5th Cir. 2022) (explaining that a party has standing to appeal "'relief being sought at its expense' by another" (quoting *Bond v. United States*, 564 U.S. 211, 217 (2011)). Plaintiffs contend that Defendants lack standing because even if Defendants' cross-appeal prevents Browe and Launderville from receiving benefits, Defendants will not be able to retain the money. But that is a merits question, not a question of standing. *See Iten v. Los Angeles*, 81 F.4th 979, 985 (9th Cir. 2023). Thus, Defendants have Article III standing to bring this cross-appeal.

Statutory standing is not relevant to whether Defendants can bring this cross-appeal. Section 502(a)(1) limits the ability of plaintiffs to bring suit. 29 U.S.C. § 1132(a)(1). One of the ways it does so is by limiting the defendants against whom suit may be brought. *See e.g., New York St. Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 132 (2d Cir. 2015). But statutory standing is "a question of whether the particular plaintiff has a cause of action under the statute." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (internal quotation marks and citation omitted). It neither limits who may defend a cause of action that exists under the statute, nor who may appeal a judgment once entered. Having found that Defendants have standing to bring this cross-appeal, we proceed to the merits.

## IV. Payment of Benefits to Launderville and Browe

Defendants argue that the district court erred by allowing Launderville and Browe to receive benefits because they are no longer participants in the Plan due to the running of the statute of limitations on their claims for wrongful denial of benefits. We agree.

As an initial matter, Browe and Launderville's claim for wrongful denial of benefits is time-barred.[2] The applicable statute of limitations is Vermont's six-year statute of limitations for

---

[2] Plaintiffs first challenged this finding in the context of a potential award of attorney's fees. While we do not

breach of contract claims. *Muto v. CBS Corp.*, 668 F.3d 53, 57 (2d Cir. 2012); 12 V.S.A. § 511. This six-year period began to accrue when "the Plan clearly and unequivocally repudiated" the entitlement to benefits. *Carey v. Int'l Bhd. of Elec. Workers Loc. 363 Pension Plan*, 201 F.3d 44, 49 (2d Cir. 1999). By 2008, Browe and Launderville had been informed that the Plan no longer had the assets to pay their benefits, App'x 215, 219, so they "knew that CTC would not and could not pay their Plan benefits," Spec. App'x 17. Instead, Laumeister personally promised to leave them bequests in his will. App'x 219. This constitutes a clear repudiation because it unequivocally informed Launderville and Browe that the Plan would not be paying their benefits. *Cf. Hirt v. Equitable Ret. Plan for Emps., Managers & Agents*, 285 F. App'x 802, 804 (2d Cir. 2008) (explaining that a plain and accurate notice of a change in benefits constitutes a clear repudiation of the old benefits). Laumeister's promise in no way negates this repudiation because, as Plaintiffs have emphasized, Laumeister and the Plan are distinct entities. Therefore, the statute of limitations expired in 2014.

Because Launderville and Browe's claims are time-barred, they are not "participants" in the Plan, as defined by ERISA, and are not entitled to recover benefits from the Plan. 29 U.S.C. § 1344(a) provides that, when a plan is terminated, "the plan administrator shall allocate the assets of the plan (available to provide benefits) among the *participants and beneficiaries of the plan*" in a specified order of priority. 29 U.S.C. § 1344 (emphasis added). As relevant, ERISA defines a participant as "any employee or former employee of an employer . . . who is or may become

---

address the potential attorney's fees, an award the district court has not yet made, we note that the test for attorney's fees in ERISA cases is "some degree of success on the merits." *Scarangella v. Grp. Health, Inc.*, 731 F.3d 146, 152 (2d Cir. 2013) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010)). But the district court "retain[s] discretion" to consider the *Chambless* factors in "'deciding whether to award attorney's fees.'" *Donachie v. Liberty Life Assur. Co. of Boston*, 745 F.3d 41, 46 (2d Cir. 2014) (quoting *Hardt*, 560 U.S. at 255 n.8).

eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7).[3]

The Supreme Court has clarified that:

> In our view, the term "participant" is naturally read to mean either employees in, or reasonably expected to be in, currently covered employment, or former employees who have a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits. In order to establish that he or she may become eligible for benefits, a claimant must have *a colorable claim that (1) he or she will prevail in a suit for benefits*, or that (2) eligibility requirements will be fulfilled in the future.

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (1989) (internal citations and quotations omitted) (emphasis added). Here, Launderville and Browe do not have a colorable claim for benefits because their claims are time-barred. *Brennan v. Metro. Life Ins. Co.*, 275 F. Supp. 2d 406, 411 (S.D.N.Y. 2003) ("It is axiomatic that an individual whose claim for benefits is time-barred does not have a colorable claim for benefits."); *see Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1039 (9th Cir. 2006) ("[A] claim that is clearly time-barred because of the claimant's own actions is not 'colorable' for the purposes of establishing ERISA standing."). By extension, they are no longer "participants" in the Plan within the meaning of ERISA. *See Adamson v. Armco, Inc.*, 44 F.3d 650, 655 (8th Cir. 1995) ("[A]ppellants lost their participant status when they allowed their benefit claims to become time-barred.")

Accordingly, Launderville and Browe are not entitled to allocations pursuant to § 1344 upon termination of the Plan.[4] The Plan may be made whole without Defendants repaying the money that would have otherwise been distributed to Launderville and Browe.

---

[3] ERISA defines "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). "Beneficiary' refers to people, '*other than the employee-participant*, who [are] covered by the plan's provisions—e.g., a spouse or dependent.'" *Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 257 (2d Cir. 2015) (emphasis added). CTC's Plan, for example, allowed participants to designate "immediate family" as beneficiaries. App'x 187, 191. Accordingly, if Browe and Launderville were entitled to recover, it would be as "participants" not as "beneficiaries."

[4] Launderville also argues that the district court erred by allowing Laumeister to offset her benefits against the contribution award she owes him. Because we have determined that Launderville is not entitled to any benefits upon termination of the Plan, we need not reach the question of whether an offset is warranted.

\*     \*     \*

We have considered the parties' remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM in PART** and **VACATE in PART** the judgment of the district court

and **REMAND** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

11